# SUPREME JUDICIAL COURT,

### FOR THE

## COUNTY OF BERKSHIRE, SEPTEMBER TERM, 1873,
## AT PITTSFIELD.

===

PRESENT:

Hon. HORACE GRAY, Chief Justice.
Hon. JAMES D. COLT,
Hon. SETH AMES,
Hon. MARCUS MORTON,          } Justices.
Hon. WILLIAM C. ENDICOTT,

---

## FARMINGTON RIVER WATER POWER COMPANY *vs.* COUNTY COMMISSIONERS.

A writ of *certiorari* (when not used as ancillary to any other process) lies only to correct errors in law.

To a petition for a writ of *certiorari* to quash the proceedings of county commissioners in refusing to abate a town tax, the commissioners may file an answer stating in detail their findings at the hearing before them, if not stated in their record; such answer should be made by the commissioners only, without joining the town therein; and the petitioners cannot control it in matter of fact by extrinsic evidence.

At a hearing before county commissioners for the abatement of a town tax assessed upon a reservoir dam and the land flowed by it, testimony as to the benefits derived in their property and business from the water power, by parties other than the owner, is admissible on behalf of the town.

PETITION for a writ of *certiorari* to quash the proceedings of the county commissioners of the County of Berkshire in refusing

to abate a town tax for the year 1869, assessed upon the petitioner by the assessors of the town of Otis.

The petition set forth that the petitioner was incorporated by St. 1867, *c.* 134, for the purpose of building, erecting, and maintaining reservoirs of water on the Farmington River and its tributaries, in the town of Otis, for manufacturing and mechanical purposes; that on and before May 1, 1869, it was seised and possessed of certain lands in Otis and the adjoining town of Tolland, on which were great ponds of water, and prior to May 1, 1869, the petitioner, under the powers granted by its charter, enlarged the ponds by erecting a dam in the town of Otis, setting back the water, raising the same, and flowing its lands about the ponds in Otis to create a reservoir of water; that in the purchase of its lands in Otis and Tolland, and in the erection of its dam in Otis, it had expended about forty-four thousand dollars; that it purchased and owned 294 acres 102 rods of land in Otis designed to be flowed, and which it flooded, and constituted the reservoir in Otis, and which with 350 acres 88 rods of land in the great ponds in Otis existing at the time of the purchase, and belonging to the petitioner, constituted 645 acres and 30 rods of land covered by water May 1, 1869, belonging to it; that it had no mills or water power, and depended for its income and support and profits upon the tolls it should receive of and from the mills and mill owners below its dam on the Farmington River, and from which it had been unable to collect any tolls or payments, or to make any agreement or contract therefor; that it had no power to compel payments for the use of its water, and was compelled to hoist the gates in its dam to furnish water to one Canfield, the first mill proprietor on the stream and river below its property and dam, which water enured to the benefit and enjoyment of all mill owners on the river below; that the shares of its capital stock were without value and worthless; that over its dam the town of Otis has laid out and established a town road leading from Otis to Tolland; that it had no income from its property; but that, notwithstanding, the assessors of Otis for the year 1869 assessed to it a tax, to wit: " On land flowed for reservoir and dam, 596 acres, valuation $20,000, tax $280; highway tax on same, $85;

tax to pay the several districts in the town of Otis for their school property, $80;" that it presented to the assessors of Otis a sworn list and statement of its property held by it within the time allowed by law for such lists to be presented to assessors, to enable them to make an abatement of taxes; that having applied for and been refused an abatement of the tax by the assessors, it duly filed with the county commissioners of Berkshire its complaint asking for an abatement of the tax because of over valuation; that afterwards such proceedings were had on this complaint that the board of commissioners adjudged and determined as follows: "They" do not find upon the "annexed evidence in fact or in law that said tax should be abated, or any part or portion thereof, and they order said petition dismissed."

The petition then alleged that this finding, and the order that the petition be dismissed, were wholly erroneous, unjust, and wrongful; that the valuation of the assessors was excessive and erroneous, and the taxation of the land flowed for reservoir and dam at that valuation was unjust, erroneous, and excessive; that the commissioners erred as matter of law upon the matter before them, in not abating the tax, or the principal part of it, and that their actions, findings, and proceedings were contrary to the facts and the law upon the facts, and the decree erroneous, invalid, illegal, and void; because the record of the case and report showed the tax was assessed on land flowed for reservoir and dam in Otis, and that the value of the land and dam was nominal, was without market value, and had no cash value, and was useless and valueless as property, and was not assessed at a fair cash value; because the value of its property was estimated by the incidental use and benefit that flowed from its construction to parties in the State of Connecticut, from whom no compensation could be had; because the property had no such capacity for valuable use as to make or give it any value as property, it being under the existing laws of the state a valueless although a costly creation; because at the time of the tax it was of nominal value only, and if ever made valuable it could then be taxed, but should not be taxed at its capacity to furnish a supply of water of prospective value, which prospective value future legislation or con-

tract might or might not bring to it; because the dam was a public road in Otis, and not liable to taxation; because the valuation of the land and dam taxed was not based upon the capacity of the property for valuable use in the year 1869; because the supply of water furnished by the reservoir passed into the Farmington River, and by the inadvertence and misfortune of the petitioner was then beyond its control, and that the waters thus passing into the said river, though valuable as an adjunct of the river to the property and parties below, were by such very fact destructive to the petitioner and rendered its property valueless; because in the judgment of the county commissioners they have not found, as required by law, whether the petitioner was or was not overrated by the assessors in the assessment of said tax.

The record of the county commissioners, a copy of which was annexed to the petition, set forth the evidence of the parties in interest at great length and concluded as follows : " The board having carefully considered the whole matter, do not find, upon the annexed evidence, in fact or in law, that said tax should be abated, or any part or portion thereof, and they order said petition dismissed."

Afterwards, the petitioner objecting, the respondents applied for leave to file the following answer :

" Upon the hearing on the petition for an abatement of the tax assessed by the town of Otis upon the complainant corporation, the county commissioners certify that they found the following facts, to wit : that about 1850 an iron establishment was erected in Otis by one Wells, called the Cold Spring Iron Works. Wells also erected a reservoir dam at the outlet of a natural pond in Otis, called the Rand Pond, and thereby raised the water of said pond, flowing a large tract of land, containing two hundred and fifty acres and upwards, for the use of the said iron works, and Wells purchased of the owners the land so flowed. This reservoir was called the Wells Reservoir. This reservoir with the iron works subsequently came by due conveyances to one Wm. J. Canfield.

" That about 1864 and 1865, divers individuals and corporations owning manufacturing establishments in the State of Con

necticut, on the Farmington River, together with said Canfield, and one Albert Hull who owned manufacturing establishments in Otis and Sandisfield in this county, by joint effort and contribution created at great cost (say forty-four thousand dollars), an immense stone dam substantially upon the site of the Wells dam, and thereby flowed another large tract of land in addition to that previously flowed by the Wells dam. And the land so flowed was purchased of the owners and was conveyed to said Canfield. The said Canfield subsequently conveyed his interest in the reservoir dam and lands, including the lands acquired for the Wells reservoir as well as the lands acquired for the new reservoir, to one J. B. Foster in trust for the parties who had erected the new reservoir, reserving to himself certain water rights and privileges in favor of his said iron works, in said Otis.

" That after the act incorporating the complainant corporation, to wit, August 15, 1867, the said Foster conveyed the same to the complainant corporation. That the stock in this corporation was wholly taken and has continued to be held by those who contributed to the erection and purchase of the said reservoir, and the stock of each was to the amount each had contributed. That the reservoir was built to supply the manufacturing establishments of the stockholders with a more uniform and permanent flow of water, which establishments are in the State of Connecticut, excepting the tannery of Hull and the iron works of Canfield. That the stockholders of said corporation manage and control its affairs as they think proper, and they enjoy, have, and possess at their several establishments, the uses and benefits of said reservoir, according to their pleasure and just as they contemplated at the time of the construction thereof. These uses and benefits are of great value to them, and almost, if not quite, indispensable a considerable portion of every year, to the success and prosperity of the aforesaid manufacturing establishments. That by this reservoir town and county roads and bridges were submerged, and others were required and built instead by the complainant, at its own expense.

" The corporation made a road upon and over the top of its dam and along the west side of the pond, in place of a town way

and bridge submerged, and at its request the selectmen of Otis laid it out as a town way, and the town conditionally accepted it, which vote was as follows : ' Voted, that the town establish the road as laid out by the selectmen, commencing near the house formerly owned and occupied by Lewis Clark and terminating near the house now owned and occupied by Wm. Clark, provided that William J. Canfield, or his heirs and assigns, will build the road to the acceptance of the selectmen, and pay all damages caused by laying and building of said road and save the town harmless from all expense, and to keep the road in repair across the dam and support railing on said dam.'

" That the assessment by the town of Otis of the tax for 1869, was in no part laid on land originally covered by natural ponds prior to the erection of the Wells dam, but on land which was purchased and flowed by Wells, and on lands in addition thereto which were purchased and flowed by the new stone dam of complainants, and the number of acres so assessed were the same as given in to the assessors as belonging to the complainants.

" And now these respondents, to wit, the county commissioners and the inhabitants of Otis, respectfully submit that the Supreme Judicial Court will not canvass the evidence laid before the commissioners with the view of drawing inferences and establishing facts therefrom, but will assume as true the facts found by the commissioners.

" The substantial fact found by the commissioners was that the complainant corporation was not taxed more than its just proportion and was not overrated, and therefore they dismissed the petition for abatement, as appears from their record which is attached to the petition in this case. And the respondents submit that the finding of facts from the evidence before them by the commissioners is final upon all matters of fact, and that their doings, findings, and judgments were in all respects just and without error, and that the complainant corporation shows no cause entitling it to the writ of *certiorari* as prayed for.

" County Commissioners, by Wilcox & Bowerman, Attorneys.

" Inhabitants of Otis, by Wilcox & Bowerman, Attorneys."

The case was reserved by *Ames, J.*, for the consideration of the full court. If the court should be of opinion that the respondents had the right to file the answer, and that it constituted a good defence, then the cause was to be continued for such further hearing upon the facts set up in the petition and answer, and such other proceedings as should be determined by the court were open to the petitioners; and if the respondents had not such right, the writ of *certiorari* was to issue.

*M. Wilcox,* for the respondents.

*H. L. Dawes & T. P. Pingree,* for the petitioner.

GRAY, C. J. By the Gen. Sts. *c.* 145, § 8, " writs of *certiorari* to correct errors in proceedings that are not according to the course of the common law shall be issued from and returnable to the Supreme Judicial Court according to the practice heretofore established." The determination of this case must be governed by the law and practice so established, which do not seem to have been kept in mind by either party to these proceedings.

A writ of *certiorari* (when not used as ancillary to any other process) is in the nature of a writ of error, addressed to an inferior court or tribunal whose procedure is not according to the course of the common law. After the writ has been issued and the record certified in obedience to it, the court is bound to determine, upon an inspection of the whole record, whether the proceedings are legal or erroneous; but the granting of the writ in the first instance is not a matter of right, and rests in the discretion of the court, and the writ will not be granted unless the petitioner satisfies the court that substantial justice requires it. *Commonwealth* v. *Sheldon,* 3 Mass. 188. *Ex parte Weston,* 11 Mass. 417. *Lees* v. *Childs,* 17 Mass. 351. *Freetown* v. *County Commissioners,* 9 Pick. 46. *Rutland* v. *County Commissioners,* 20 Pick. 71. *Gleason* v. *Sloper,* 24 Pick. 181. *Marblehead* v. *County Commissioners,* 5 Gray, 451, 453. *Pickford* v. *Mayor & Aldermen of Lynn,* 98 Mass. 491.

A writ of *certiorari* lies only to correct errors in law, and not to revise a decision of a question of fact upon the evidence introduced at the hearing in the inferior court, or to examine the sufficiency of the evidence to support the finding, unless objection

was taken to the evidence for incompetency, so as to raise a legal question. *Hayward's case*, 10 Pick. 358. *Nightingale's case*, 11 Pick. 168. *Cousins* v. *Cowing*, 23 Pick. 208. *Stratton* v. *Commonwealth*, 10 Met. 217. In *Nightingale's case*, Mr. Justice Wilde said: " We cannot on *certiorari* examine the merits of a cause and set aside a verdict as against evidence." And even if incompetent evidence was admitted, the court in its discretion will refuse a *certiorari* if the fact in question was clearly proved by other evidence. *Cobb* v. *Lucas*, 15 Pick. 1. *Gleason* v. *Sloper*, 24 Pick. 181.

The refusal of the county commissioners to abate a tax cannot be revised upon *certiorari*, except for an erroneous ruling in matter of law. *Gibbs* v. *County Commissioners*, 19 Pick. 298. *Chicopee* v. *County Commissioners*, 16 Gray, 38. *Lowell* v. *County Commissioners*, 6 Allen, 131. The Legislature has evidently considered the county commissioners a more appropriate tribunal to decide questions of fact in the matter of taxation than a court of common law or a jury.

The provision of the Gen. Sts. *c.* 145, § 9, reënacting the St. of 1858, *c.* 109, and empowering the court, upon *certiorari*, to " enter such judgment as the court below should have rendered, or make such order, judgment, or decree in the premises as law and justice require," does not enlarge the authority of the court to examine the matters passed on below, but merely enables it, after examining the case according to the rules of law, to embody the result in a new judgment, framed so as to secure the rights of all parties, instead of being limited, as it was before the statutes were amended in this respect, to quashing or affirming the judgment below. *Commonwealth* v. *West Boston Bridge*, 13 Pick. 195, 196. *Lowell* v. *County Commissioners*, 6 Allen, 131. *Haverhill Bridge Proprietors* v. *County Commissioners*, 103 Mass. 120.

If a question of law is raised at the hearing before an inferior court, whose proceedings are not according to the course of the common law and not the subject of appeal or exception, it is proper to state on the record the facts proved and the ruling in matter of law upon them. *Commonwealth* v. *Walker*, 4 Mass.

556, 558. And if this is not done, the inferior tribunal may be required by this court to certify, together with its record, a statement of the ruling made upon the point set out in the petition for a *certiorari*. *Mendon* v. *County Commissioners*, 2 Allen, 463.

But whenever the case was within the jurisdiction of the inferior tribunal, the petitioner for a writ of *certiorari* cannot be permitted to introduce evidence to contradict or vary its statement, in its record or return, of its proceedings and decision. *Pond* v. *Medway*, Quincy, 193. *Commonwealth* v. *Blue Hill Turnpike*, 5 Mass. 420. *Rutland* v. *County Commissioners*, 20 Pick. 71. *Mendon* v. *County Commmissioners*, 5 Allen, 13. *Charlestown* v. *County Commissioners*, 109 Mass. 270.

It is only where extrinsic evidence has been introduced, at the hearing upon the petition, in support of the decision below, and by way of showing that substantial justice does not require the proceedings to be quashed, that like evidence may be introduced by the party petitioning for the writ, and then upon the same point only. *New Salem, petitioner*, 6 Pick. 470. *Rutland* v. *County Commissioners*, 20 Pick. 71. *Gleason* v. *Sloper*, 24 Pick. 181. *Stone* v. *Boston*, 2 Met. 220, 228.

A writ of *certiorari* must be addressed to the court having the custody and control of the record of the proceedings sought to be quashed. *Commonwealth* v. *Winthrop*, 10 Mass. 177. It can only be granted after notice and opportunity to show cause against it; and, if granted without such notice, will be quashed as improvidently issued. *Commonwealth* v. *Downing*, 6 Mass. 72. When the proceedings were before county commissioners, notice of the petition should be given to them, the answer or return to the petition must be the joint act of the whole present board, and the separate answer of one commissioner cannot be received. *Plymouth* v. *County Commissioners*, 16 Gray, 341.

The uniform practice of this court for many years, as shown in numerous reported cases, has been to hear the whole case upon the petition, in order to avoid unnecessary delay and expense to the parties, and to enable the court to deal with the substantial justice of the case, untrammelled by merely formal and technical defects in the record.

No better illustrations of the course of proceedings upon applications for a writ of *certiorari* are to be found in our books than are afforded by the two cases, upon which the petitioners in this case principally rely, of *Rutland* and *Mendon* v. *County Commissioners of Worcester*.

In the case of *Rutland*, 20 Pick. 71, the town of Rutland petitioned for a writ of prohibition to the county commissioners, to prevent their issuing a warrant against the town for the expenses of making a highway laid out by the commissioners through that town, until a petition for a writ of *certiorari* to quash their proceedings could be heard, and the court said : "A petition for a writ of *certiorari* is well understood to be addressed to the discretion of the court. When the record is before the court on the return of the writ, the court will look only at the record ; for this reason it would be futile to admit evidence to contradict the record on the petition for a *certiorari ;* but it being within the discretion of the court to grant or refuse the writ, evidence extrinsic to the record may properly be received to show that no injustice has been done, and that a *certiorari* ought not to be issued. The petitioners, in the case before us, will in the first place exhibit the record and point out in what particulars they consider it erroneous or defective ; and then the respondents may prove by extrinsic evidence that no injustice has been done, that if the proceedings shall be quashed, the parties cannot be placed *in statu quo*, or that for any good reason a *certiorari* ought not to be granted. If such evidence shall be offered by the respondents, the petitioners will of course have a right to rebut it by like evidence." Testimony was then introduced by both parties upon that point only ; and the court, upon considering that testimony in connection with the record and the proposed petition for a *certiorari*, held that substantial justice did not require a writ of *certiorari* to be issued, and dismissed the petition.

In the case of *Mendon*, the petition for a writ of *certiorari* to compel the county commissioners to certify the record of their proceedings confirming the laying out of a town way by the selectmen of Mendon, alleged that the commissioners at the hearing before them made an erroneous ruling upon a question of the

burden of proof, which was not stated in their record. No answer being filed to the petition, it was heard upon the admission of the respondents, in the nature of a demurrer, that the facts alleged therein were true, and the court directed a writ of *certiorari* to issue, containing a precept to the commissioners to certify their record to this court, with a statement of the ruling made by them on the point set out in the petition. 2 Allen, 463. Before a writ of *certiorari* was issued, it was agreed by the counsel that an answer to the petition might be filed, and the case be considered by the court as if the writ had been issued and the case had been heard upon the writ and answer; and the commissioners accordingly filed an answer containing a statement of their rulings in detail. To this answer the petitioners filed a replication, denying some of the facts stated in the answer, alleging that it did not contain all the material facts necessary to the determination of the case, and praying that they might be heard upon the facts. But the court held that the statement of the commissioners was conclusive, and being satisfied that their decision, as stated by them, upon the point complained of by the petitioners, was substantially correct, held that no good cause was shown for vacating their proceedings or for remitting the case to a new hearing, and adjudged the proceedings to be good. 5 Allen, 13. One passage in the opinion of Chief Justice Bigelow, in 2 Allen, 465, might at first sight be thought to imply that in the hearing upon a writ of *certiorari*, when issued, the court should not be governed by strict and exact rules of law; but it is manifest from the context that he had in mind only the hearing upon the petition for the writ; and he prefaced the second opinion, in 5 Allen, 15, by declaring that by the first decision " the court did not intend to change in any essential degree the mode of proceeding or the practice in cases of this nature."

In the present case, the record of the commissioners, a copy of which is annexed to the petition for a *certiorari*, does not state any ruling of the commissioners, except their final decision that they do not find in fact or in law that the tax or any part thereof should be abated, and their order that the petition for an abate-

ment should be dismissed. The annexing of a full report of the evidence taken before them, as a part of their report, was, to say the least, irregular, and unnecessarily incumbered their record. The petition for a *certiorari* does not specify any error in the admission or rejection of evidence, nor pray for a certificate of any ruling made by the commissioners and not appearing on their record. The answer proposed to be filed does not state any facts but those found by the commissioners at the hearing before them. The town therefore irregularly joined in the answer of the commissioners ; and the name of the town should be stricken out of that answer, leaving it to stand as a return in writing by the commissioners of their findings, which cannot be disputed in matter of fact, and in which the petitioners have failed to show any error in matter of law.

The evidence admitted by the commissioners, which is now argued to have been incompetent, is of two classes. The one consists of testimony as to the benefits derived by other parties in their property and business from the water power created by the reservoir dam of the petitioners. This was competent to show the value of the reservoir by reason of its capacity for valuable use, and to disprove the petitioners' allegation that it was of merely nominal value. *Pingree* v. *County Commissioners,* 102 Mass. 76. The other consists of answers to questions put to the petitioners' witnesses on cross-examination. This might be admitted in the discretion of the commissioners by way of testing the credibility of the witnesses. It does not appear that the commissioners allowed improper weight or effect to any of the evidence.

The necessary conclusion, following as nearly as may be the terms of the report on which the case has been reserved for our determination, is that the commissioners have the right to file the answer tendered, after amending it by striking out the name of the town ; that the answer, thus amended, constitutes a good defence, which cannot be impeached or controlled by the petitioners that no further proceeding is open to them, and that their

*Petition for a writ of certiorari be dismissed.*