ONSET STREET RAILWAY COMPANY *vs.* COUNTY COMMISSIONERS OF PLYMOUTH & another.

Suffolk. November 11, 1890. — September 19, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Street Railway — Land Damages — Certiorari — County Commissioners — Joinder of Petitioners — Separate Warrants of Distress.*

The use and operation for passenger and freight purposes by the Onset Street Railway Company, under the agreement made by it with the Onset Bay Grove Association, of the railroad already built by that association along an avenue at its seaside resort, rendered such street railway company liable under its charter (St. 1886, c. 285,) to settle, in the manner provided by the Pub. Sts. c. 112, all damages caused to the abutting lot owners by the use of the avenue for the building of such railroad.

Under the Pub. Sts. c. 49, § 34, which authorizes two or more persons applying to the county commissioners at the same time for damages or indemnity to join in the same petition, lot owners injured by a street railway constructed in front of their lots may join in one petition.

Where several lot owners join in one petition for damages to their separate estates, county commissioners may issue separate warrants of distress for the damages awarded to such owners.

If a street railway company, whose charter requires it to settle all damages caused by the taking of streets at a seaside resort for the building of its road, constructs the same, and transports both freight and passengers thereon, the abutting lot owners who are seised in fee of easements in such streets, and who are injured by their obstruction or change of grade, are entitled to damages, although not owning to the centre of the streets.

PETITION for a writ of certiorari. The case was heard by *Devens*, J., and reserved by him for the consideration of the full court. The facts appear in the opinion.

The case was submitted on briefs, in November, 1890, and afterwards, in June following, was submitted on the same briefs to all the judges except *Field*, C. J. and *Lathrop*, J.

*A. Hemenway & W. Scofield*, for the petitioner.

*H. Kingman*, for the respondents.

BARKER, J. This is a petition for a writ of certiorari, heard by a single justice, and reserved for the determination of the full court. The petitioner, a street railway company, complains that warrants of distress have been issued by the county commissioners of Plymouth County, for land damages awarded to owners of lots which abut on streets through which its railway is constructed.

The persons claiming damages acquired the titles of their respective lots from the Onset Bay Grove Association. This was a corporation chartered by the St. of 1877, c. 98, "for the purpose," as stated in § 1, "of holding personal property and real estate, where a wharf, hotel and other public buildings may be erected, and building lots sold or leased for the erection of private residences or cottages, under such rules and regulations as the association may prescribe," and subject to the general laws applicable to such corporations. It bought the territory in Wareham known as Onset and Riverside, and caused maps of the same to be recorded in the Plymouth Registry of Deeds, on which were shown lots, streets, avenues, etc. Each lot was numbered on the plans, and was conveyed by a separate deed, in which the only description was, "Lot numbered on a plan of lands of Onset Bay Grove Association, recorded . . . as the same is set out on same plan."

After the owners had thus acquired title, the association built a railroad in the avenue on which their lots were situated, and operated it by steam power, changing to some extent the grade of the avenue. This was done without legislative authority. No location of the railroad was filed, but it was built and in use by the association before June 16, 1886, the date of the petitioner's charter. By this charter (St. 1886, c. 285) the petitioner was empowered, in § 4, "to construct, maintain and use a railway with convenient double or single tracks upon and over such

streets and highways in the town of Wareham as shall be from time to time fixed and determined by the selectmen of said town; and upon and over the ways and territory of the Onset Bay Grove Association, a corporation duly established in said town, by consent of said association; provided, all damages incurred by the owners of the fee in any of said last mentioned ways and territory by the taking of any part of said ways or territory for the building of said road shall be settled by said company as is provided in chapter one hundred and twelve of the Public Statutes." The charter also gave specific authority, in § 9, to "purchase or lease the tracks already laid upon the lands of the Onset Bay Grove Association upon such terms as may be mutually agreed upon," and authorized the transportation of freight as well as of passengers upon the railroad, and its operation by animal power, the Baldwin steam motor, or any other motive power which the selectmen of Wareham may permit.

Pursuant to this authority, the petitioner, on December 31, 1886, entered into an indenture with the Onset Bay Grove Association, which conveyed to the petitioner a right of way over the lands and streets of the association in Onset and Riverside, shown on the plans mentioned, "according to the routes and measurements of the track of said railway company, as they are now actually located and constructed." The petitioner covenants to save the association harmless from all damages lawfully recovered from or suffered by it by reason of the location or use of the tracks in any place within the territory. The indenture states that nothing in it shall be construed to impair or conflict with the rights of any purchaser of land abutting on the line of the railway, the conveyance of which had been already made or agreed upon. Since its execution, the petitioner has used the railroad in accordance with the terms of the indenture and of its charter. The railroad so used is the same which had been built and used by the association. The petitioner has done nothing to affect the property of the landowners, save to accept the indenture and use the railroad under the indenture and its charter.

On July 11, 1887, the claimants to whom damages were awarded joined with others in a petition to the county commissioners, alleging ownership in fee of lots shown upon the plan,

and that the railway company had constructed its railroad over the avenues on which the lots were situated, and asking damages. The railway company objected to the jurisdiction of the commissioners, and claimed that the owners were improperly joined in one petition, and that there was no sufficient allegation of their ownership, or of any taking of their property. At the hearing the commissioners held, as matter of law, that the deeds conveyed to the grantees a title as owner in fee to the middle of the avenue, found that some of the claimants were entitled to damages, and that others were not, and on May 8, 1888, awarded separate damages, with costs, to nine of the owners. No jury was applied for, and, the damages not having been paid, the commissioners, on August 6, 1889, issued separate warrants of distress. The petitioner's property was seized on these warrants on August 10, 1889, and thereupon this proceeding was brought.

The answer of the commissioners shows that the only evidence of a " taking " by the railway company was the indenture of December 31, 1886, and the actual use of the tracks therein mentioned, which were laid by the association before the passage of the railway company's charter.

The claim which lies at the foundation of the petitioner's case may be first considered. It is in substance that the commissioners had no jurisdiction of any claims of the landowners for damages, because it had not taken any of their land, but had only purchased or leased, by the indenture of December 31, 1886, the tracks already laid by the association.

This claim is unsound. All that was made necessary by its charter to render the railway company liable to settle, in the way provided by the Pub. Sts. c. 112, damages incurred by an owner in fee of any of the territory by the taking of any of the ways for the building of the railroad, was for the company to use the railroad. This is the plain intention of §§ 4 and 9 of its charter, when construed in the light of the existing facts. The situation was this. The Onset Bay Grove Association had, without legislative authority, built, and was operating, a steam railroad in Wareham. The railroad was laid in streets in which the owners of abutting lands had easements in fee, even if the association owned the soil, and these easements were obstructed and inter-

fered with by the railroad.   Whether or not it was a public nui-
sance, its use was liable to be stopped by the individuals whose
property it injured.   The charter of the petitioner, and its use
in accordance with the charter of the railroad under the inden-
ture of December 31, 1886, had the effect of legalizing the main-
tenance of the railroad and its operation in a reasonable manner,
and must have been so intended.   The charter and the acts of both
corporations are to be construed in the light of this situation.
The railway company was explicitly authorized to purchase or
lease the tracks already laid, and the expressed condition of its
use of them was that it should settle, as provided in the statute,
all damages incurred by landowners by the taking of any part of
the ways for the building of the railroad.

The charter neither calls for nor contemplates any formal or
documentary " taking " or seizure of property by the railway
company in order to make it liable to settle the damages con-
templated in the proviso of § 4.   It does require it to settle
them in a particular manner, as a condition of its right to main-
tain or use the road already laid.   The petitioner used the
railroad mentioned in this condition, and thereby gave the re-
spondents jurisdiction to award to any owner of the fee in any
part of the territory any legal damages incurred by him by the
taking or use of the ways for the building of the railroad.   The
phrase " ways and territory of the Onset Bay Grove Associa-
tion," in § 4 of the charter, is clearly intended to indicate the
territory known as Onset and Riverside and the ways there laid,
and not to designate real estate or property of the association.
The landowners who asked the respondents to assess their dam-
ages were " owners of the fee " for whose benefit the proviso was
enacted.   If, in point of fact, they had incurred legal damages
by the using of the streets for the building of the railroad, the
commissioners had jurisdiction to estimate and award them.

The joinder in one petition to the county commissioners of
different persons owning separate lots is authorized by the pro-
vision of the Pub. Sts. c. 49, § 34, that, " if two or more persons
apply to the commissioners at the same time for joint or several
damages or indemnity, they may join in the same petition."
The commissioners, therefore, had jurisdiction of the parties
and of their dispute under a proper petition, and whether the

claimants were entitled to damages depended upon the question of fact to be tried, whether they had suffered legal damages.

This court will not, upon a petition for certiorari, attempt to revise the findings of commissioners upon such a question of fact. *Farmington River Water Power Co.* v. *County Commissioners*, 112 Mass. 206. The writ is not granted as matter of right, but is in the discretion of the court, which must be satisfied that substantial justice requires it. It will not be issued to correct merely technical errors, especially such as could have been otherwise remedied, nor unless the petitioner has pursued his remedy without laches. If incompetent evidence has been admitted, or an erroneous ruling made, and the petitioner's rights are not really prejudiced, and the court can see that the decision was substantially correct and worked no injustice, it will not interfere by granting the writ. *Cobb* v. *Lucas*, 15 Pick. 1. *Gleason* v. *Sloper*, 24 Pick. 181. *Whately* v. *County Commissioners*, 1 Met. 336. *Farmington River Water Power Co.* v. *County Commissioners*, 112 Mass. 206.

In view of these principles, the issuing of separate warrants of distress, if irregular, would not authorize the granting of the writ. It does not touch the merits of the controversy, and, as the costs were divided, worked no injury to the petitioner. But we are of opinion that the issuing of separate warrants of distress was within the power of the commissioners. Their proceedings in such cases are governed, in the absence of prescribed rules, by common sense. In cases of the joinder in one petition of several persons claiming damages to separate estates, separate warrants may be necessary to prevent a failure of the remedy. It is analogous to the granting of separate judgments in cases tried together before a sheriff's jury; *Lanesborough* v. *County Commissioners*, 22 Pick. 278, 281; *Wyman* v. *Lexington & West Cambridge Railroad*, 13 Met. 316; *Warner* v. *Franklin*, 131 Mass. 348; and to the issuing of several executions upon one judgment in cases of suits upon a probate or other bond.

It remains to inquire whether any substantial injustice appears to have been caused by the rulings of the commissioners in determining the question of damages. While it is settled that the construction of an ordinary street railway over a public way is not an additional servitude, for which owners are entitled to

compensation without special provision therefor, (*Attorney General* v. *Metropolitan Railroad,* 125 Mass. 515, and *Pierce* v. *Drew,* 136 Mass. 75,) the petitioner's charter contains, as we have seen, a special provision that it shall settle all damages caused by the taking of the streets for the building of this railroad.   Aside from this, we are of the opinion that it cannot be said, as matter of law, that the building and use of a railroad operated by steam power in transporting both freight and passengers in close proximity to dwellings, in a village designed and used as a seaside summer resort, and in a street in which the owners of the abutting lots have rights of way and other easements in fee which may be obstructed by the railroad, is not an injury to such owners.   Whoever owned the soil of the avenue in which the railroad was built, the abutting landowners were seised in fee of an easement in the avenue, under which they were entitled to its free and unobstructed use in connection with their estates.   This easement was appurtenant to their lots, and its interruption or impairment was a damage to their lands.   *Dodge* v. *County Commissioners,* 3 Met. 380.   *Parker* v. *Boston & Maine Railroad,* 3 Cush. 107.   *Rodgers* v. *Parker,* 9 Gray, 445.   *Walker* v. *Old Colony & Newport Railway,* 103 Mass. 10.   *Story* v. *New York Elevated Railroad,* 90 N. Y. 122.

But it is claimed by the petitioner that the ruling that the deeds conveyed a title in fee to the middle of the avenue was erroneous, and the respondents do not now argue that it was correct.   We do not find it necessary to consider whether this ruling was correct.   It is clear that, whoever may own the soil of the avenue, no one is entitled to its exclusive occupation.   The respondents could not have made their estimate and award upon the basis that the lot owners were entitled to compensation for the value of the land covered by the tracks.   Upon every theory, it was part of an avenue for travel, and subject to easements which would prevent any use inconsistent with its being an open and common street.   Whether, therefore, what the commissioners call the fee was thought by them to have been in one party or the other, can have made no substantial difference in their estimation of the damages, which, upon the theory that the avenue must be kept open and unobstructed for common use as a street, must have been determined in view of the injury to the lots by reason

of the obstruction of the way and its change of grade. This view is strengthened by the facts that none of the awards are large, that no damages were awarded to some of the claimants, and that the awards do not vary in amount in proportion to the size of the lots. We see nothing to indicate that this ruling, which was but one of several elements entering into the award, has resulted in any substantial injustice to the petitioner.

*Petition dismissed.*