STATE BOARD OF RETIREMENT & others[1] *vs.* FRANCIS
WOODWARD & others.[2]

Suffolk. April 6, 2006. - May 15, 2006.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Action in nature of certiorari. *Retirement. Public Employment,*
Forfeiture of retirement benefits. *Limitations, Statute of. Statute,*
Construction.

This court concluded that upon statement of a proper claim for relief in the
    nature of certiorari, a plaintiff is entitled to certiorari review under G. L.
    c. 249, § 4, and whether a complaint adequately alleges a claim for relief
    under that statute may be tested by means of a motion to dismiss [702-704];
    this court further concluded that on certiorari review, review extends to the
    entire record of the proceedings that are the subject of the complaint for
    relief in the nature of certiorari, or to such portions of the record as the
    parties agree are necessary [704].
This court concluded that pension forfeiture proceedings under G. L. c. 32,
    § 15 (4), are not subject to any statute of limitations; thus, a District Court
    judge erred in concluding that the six-year contract statute of limitations
    operated to bar the State Board of Retirement's implementation of pension
    forfeiture proceedings against a former State Representative more than six
    years after his Federal convictions of crimes related to his public
    employment. [705-708]

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on May 4, 2005.

The case was reported by *Spina,* J.

*Peter Sacks,* Assistant Attorney General, for the plaintiffs.

*Edward J. McCormick, III* (*Elizabeth Maitland* with him) for
Francis Woodward.

SPINA, J. The primary question before us is whether the vote
of the State Board of Retirement (board) to implement the pen-
sion forfeiture provisions of G. L. c. 32, § 15 (4), against former

---

[1]The Treasurer and Receiver General and the Commonwealth.

[2]The Justices of the Wrentham Division of the District Court Department,
as nominal parties.

State Representative Francis Woodward, based on Woodward's Federal convictions of mail fraud, wire fraud, interstate travel to commit bribery, and conspiracy to commit those crimes, was time barred. We hold that it was not, and that pension forfeiture proceedings under § 15 (4) are not subject to any statute of limitations.

1. *Background.* Woodward was a State representative from January, 1977, until May, 1992, and an employee of the Department of Industrial Accidents from May, 1992, until he retired in July, 1995. A twenty-eight count indictment was returned against him on July 27, 1995, in the United States District Court for the District of Massachusetts. On October 2, 1996, a jury found him guilty on five counts, and not guilty on twenty-three counts. Woodward's convictions stemmed from his acceptance of illegal gratuities from a lobbyist for John Hancock Mutual Life Insurance Company, with the intent of depriving his constituents of his honest services as a legislator at a time when he was House chairman of the joint committee on insurance. He was sentenced on February 7, 1997, and his convictions were affirmed on appeal. *United States* v. *Woodward*, 149 F.3d 46 (1st Cir. 1998), cert. denied, 525 U.S. 1138 (1999).

The board did not take action against Woodward's pension at the time of his convictions. Although the board now acknowledges that Woodward's convictions likely received media attention at the time, the record does not indicate that the board had actual knowledge of the convictions before October, 2002.[3] See *Nantucket* v. *Beinecke*, 379 Mass. 345, 352-353 (1979) (board of selectmen's awareness of probable presence of article in local newspaper about pending litigation not proper subject for

---

[3]The Legislature amended G. L. c. 32, § 15, in 2004 by adding a now subparagraph (5), which states:

"If the attorney general or a district attorney becomes aware of a final conviction of a member of a retirement system under circumstances which may require forfeiture of the member's rights to a pension, retirement allowance or a return of his accumulated total deductions pursuant to this chapter, sections 58 or 59 of chapter 30 or section 25 of chapter 268A, he shall immediately notify the [public employee retirement administration commission] of such conviction."

See St. 2004, c. 149, § 79; St. 2004, c. 352, § 19A (correcting citation error in initial version of new subparagraph [5]).

judicial notice in determination when statute of limitations began to run). On October 17, 2002, in response to published newspaper articles regarding the continued receipt of pension payments by several government retirees, including Woodward, who had been convicted of a crime related to their public employment, the board notified Woodward that it had received information that could result in the forfeiture of his benefits under G. L. c. 32, § 15 (4).[4] Woodward was offered an opportunity to appear and show cause why his pension benefits should not be terminated. On November 21, 2002, the board voted to implement § 15 (4) pension forfeiture against Woodward.

Woodward timely sought review in the Wrentham Division of the District Court Department under G. L. c. 32, § 16 (3). He moved for summary judgment, asserting that the board's action was time barred under the six-year statute of limitations applicable to actions in contract, G. L. c. 260, § 2. He argued that he had been convicted on October 2, 1996, and the board had failed to take action to forfeit his pension until October 17, 2002, more than six years later.

The board filed a cross motion for summary judgment on the issue of the statute of limitations, arguing that forfeiture is an automatic consequence of a member's conviction of a crime involving a violation of laws applicable to his office or position; that a proceeding to forfeit a pension is not an action for breach of contract subject to the contract statute of limitations; and that even if the contract statute of limitations did apply, it did not bar forfeiture because Woodward's conviction did not become final for purposes of § 15 (4) until he was sentenced, which did not occur until February 7, 1997, less than six years before the board's action.

In granting summary judgment for Woodward, the District Court judge ruled that Woodward's pension was an "enforceable contract," and that "an action pursuant to G. L. c. 32, § 15 (4)[,] . . . [is a] cause of action in contract . . . [that]

---

[4]General Laws c. 32, § 15 (4), states in pertinent part: "In no event shall any member after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance under the provisions of [G. L. c. 32, §§ 1-28] . . . ."

must be brought within six years of the alleged breach. G. L. c. 260, § 2." The judge then ruled that the statute of limitations began to run on October 2, 1996, the date the jury returned their guilty verdicts against Woodward in the United States District Court, which she ruled was the date of the final conviction for purposes of § 15 (4). The judge concluded that because the board commenced its action under § 15 (4) by letter dated October 17, 2002, more than six years later, it was time barred.[5]

The board filed a petition for certiorari under G. L. c. 249, § 4, in the Supreme Judicial Court for Suffolk County. A single justice reserved and reported the following questions, without determination, to the full court:

> "1. Whether G. L. c. 249, § 4, provides the State Board of Retirement with a right to judicial review of the decision of the District Court or whether G. L. c. 249, § 4, provides for a judicial review as a matter of discretion, requiring, where the issue is raised by the defendant's motion to dismiss, a preliminary finding by the Reviewing Court that the petitioner is entitled to a review of the District Court Decision?

> "2. Whether (if the answer to the first question is that the Board has established its entitlement to review), as argued in the Motion to Strike and/or Dismiss, on certiorari review of the District Court's decision, the only materials that should be considered by the reviewing court are the materials physically presented to the District Court in connection with the cross-motions for summary judgment, or instead whether the reviewing court should consider other materials filed with the district court?

> "3. Whether (if the answer to the first question is that the Board has established its entitlement to review) the District Court was correct in concluding that the Board's implementation of G. L. c. 32, § 15 (4), resulting in

---

[5]The judge did not reach Woodward's other claims, namely, that the board's decision lacked a basis in fact, that it was based on an error of law, and that it violated his constitutional rights to due process and equal protection. The parties agree that if the board prevails in this appeal, the matter must be remanded for resolution of those claims.

forfeiture of Woodward's retirement allowance, was time barred?"

2. *Certiorari.* Woodward filed a motion to strike or dismiss the board's complaint for relief in the nature of certiorari, alleging that because certiorari review rests in the sound discretion of the court, the board first must seek leave to obtain certiorari review before it may file its complaint. The issues raised in Woodward's motion to dismiss are the subject of the first reported question.

Prior to the 1974 promulgation of the current Massachusetts Rules of Civil Procedure, a petition for a writ of certiorari could be granted only after notice to the tribunal whose proceedings were sought to be quashed, and an opportunity to show cause why the writ should not issue. *Farmington River Water Power Co.* v. *County Comm'rs*, 112 Mass. 206, 214 (1873). The granting of the petition and the issuance of the writ was not a matter of right, but rested in the sound discretion of the reviewing court. *Id.* at 212. See *Byfield* v. *Newton*, 247 Mass. 46, 58 (1923). The writ did not issue except on a showing that substantial justice required it. *Farmington River Water Power Co.* v. *County Comm'rs, supra.* See *Byfield* v. *Newton, supra* ("It must appear that manifest injustice has been done to the petitioner" because of substantial error of law).

At a second phase of the proceedings, after the writ issued and the lower tribunal made a return by certifying the record of its proceedings in obedience to the writ, or by answer to the writ, the reviewing court was bound to examine the entire record and determine whether the proceedings were legal or erroneous. *Farmington River Water Power Co.* v. *County Comm'rs, supra.*

By 1873 the "uniform practice . . . ha[d] been to hear the whole case upon the petition, in order to avoid unnecessary delay and expense to the parties, and to enable the court to deal with the substantial justice of the case." *Id.* at 214. The issue of manifest injustice, originally the threshold discretionary issue to be pleaded and proved before a writ would issue and the case decided on the merits, became an element of a petitioner's case in chief. Failure to state a proper case was grounds for sustain-

ing a demurrer. See *Lucia* v. *Water & Sewer Comm'rs of Medford*, 332 Mass. 468, 470 (1955); *Colantuoni* v. *Selectmen of Belmont*, 326 Mass. 778, 779 (1951).

On July 1, 1974, the Massachusetts Rules of Civil Procedure became effective. 365 Mass. 730 (1974). Rule 81 (b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 841 (1974), abolished ancient writs, including certiorari, but provided that "relief formerly obtainable under any such writ" would continue to be available in a civil action under the rules.[6] Under the rules, certiorari follows the prerules practice of deciding the questions of substantial justice and error of law at a single proceeding. See, e.g., *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 758 (1976). The appropriate means to test the adequacy of the allegations set forth in a complaint seeking relief in the nature of certiorari is by motion to dismiss. See *Viriyahiranpaiboon* v. *Department of State Police*, 52 Mass. App. Ct. 843 (2001).

In his motion to strike or dismiss, Woodward does not challenge the adequacy of the board's complaint, but instead argues that the board must obtain leave of court before it may file a complaint. He contends that the board must establish through an application for leave to file a complaint that it has suffered manifest injustice. There is no such requirement, and the former bifurcated process similar to, but less extreme than, the one Woodward calls for had been discontinued prior to 1873. Woodward cites no case since 1873 where the petitioner or plaintiff seeking certiorari review was required to obtain leave of court on a showing of manifest injustice before he could seek or obtain a hearing on the merits of his claims of error.

The requisite elements for availability of certiorari are (1) a judicial or quasi judicial proceeding (2) from which there is no other reasonably adequate remedy (3) to correct substantial error of law apparent on the record (4) that has resulted in manifest injustice to the plaintiff or an adverse impact on the

---

[6]Statute 1973, c. 1114, § 289, approved November 30, 1973, and by § 351 made effective July 1, 1974, conformed G. L. c. 249, § 4, which authorizes certiorari review, to the Massachusetts Rules of Civil Procedure, also effective July 1, 1974. It did not alter the scope of review. See *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 48 (1977).

real interests of the general public. *Massachusetts Bay Transp. Auth.* v. *Auditor of the Commonwealth*, 430 Mass. 783, 790 (2000); *Whitney* v. *Judge of the Dist. Court of N. Berkshire*, 271 Mass. 448, 459 (1930). The board alleges in its complaint that the judge committed "substantial and material" errors of law, "apparent on the record," by ruling that the six-year contract statute of limitations applies to proceedings under G. L. c. 32, § 15 (4), and by ruling that Woodward's final convictions occurred more than six years before the board instituted administrative proceedings against Woodward. The board further alleges in its complaint that it has "no remedy other than review under the certiorari statute, G. L. c. 249, § 4," and that failure to correct the alleged errors will result in "manifest injustice to the [b]oard and to the public interest." These allegations adequately state a cause of action for relief in the nature of certiorari from judgments of the District Court under G. L. c. 32, § 16 (3). See *State Bd. of Retirement* v. *Bulger*, ante 169, 172-173 (2006); *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130, 134-135 & n.4 (1997). The board is thus entitled to certiorari review under G. L. c. 249, § 4.

We answer the first reported question as follows: "Upon statement of a proper claim for relief in the nature of certiorari, a plaintiff is entitled to certiorari review under G. L. c. 249, § 4. Whether a complaint adequately alleges a claim for relief in the nature of certiorari may be tested by means of a motion to dismiss. We also conclude that, in this case, Woodward's motion to strike or dismiss the board's complaint should be denied."

With respect to the second reported question, a court that undertakes certiorari review "is bound to determine, upon an inspection of the *whole record*, whether the proceedings are legal or erroneous" (emphasis added). *Farmington River Water Power Co.* v. *County Comm'rs, supra* at 212. The parties may agree to include only those portions of the record that are necessary fully to present the issues raised on appeal.

The answer to the second reported question is: "On certiorari review, review extends to the entire record of the proceedings that are the subject of the complaint for relief in the nature of certiorari, or to such portions of the record as the parties agree are necessary."

3. *Statute of limitations.* The board argues that the judge erred by ruling that implementation of G. L. c. 32, § 15 (4), is an action in contract subject to the six-year contract statute of limitations. We agree.

General Laws c. 260, § 2, states: "Actions of contract . . . shall, except as otherwise provided, be commenced only within six years after the cause of action accrues." "As used in statutes of limitation, the word 'action' has been consistently construed to pertain to court proceedings." *Shafnacker* v. *Raymond James & Assocs., Inc.*, 425 Mass. 724, 729-730 (1997), quoting *Carpenter* v. *Pomerantz*, 36 Mass. App. Ct. 627, 631 (1994). See *West* v. *Gibson*, 527 U.S. 212, 220 (1999) ("the word 'action' often refers to judicial cases, not to administrative 'proceedings' "); *New York Gaslight Club, Inc.* v. *Carey*, 447 U.S. 54, 60-62 (1980) (distinguishing civil "actions" from administrative "proceedings").

A pension forfeiture under "G. L. c. 32, § 15 (4), is mandatory and occurs by operation of law . . . . [It] is an automatic legal consequence of conviction of certain offenses." *MacLean* v. *State Bd. of Retirement*, 432 Mass. 339, 342-343 (2000). The board's implementation of § 15 (4) is not an "action in contract" subject to the six-year contract statute of limitations, but a ministerial step to effectuate formally what already has occurred by operation of law. The hearing provisions of § 15 afford the member due process rights, including the opportunity to respond to evidence that he is the same person who was "convict[ed] of a criminal offense involving violation of the laws applicable to his office or position." G. L. c. 32, § 15 (4).[7]

Moreover, the Legislature did not refer to proceedings under § 15 as an "action in contract." Where the Legislature intended to give a retirement board or employing unit an "action in

---

[7]The result would be the same under contract law. A member's conviction of a criminal offense involving violation of the laws applicable to his office or position amounts to the occurrence of a condition subsequent that discharges the board's obligation of further performance to provide a retirement allowance. See *Haverhill* v. *George Brox, Inc.*, 47 Mass. App. Ct. 717, 719-720 (1999). See also Restatement (Second) of Contracts §§ 224, 230 (1981). Under contract law the board's obligation to pay a member's retirement allowance is discharged by operation of the terms of the contract, namely, the forfeiture provisions of G. L. c. 32, § 15 (4).

contract" under G. L. c. 32, it did so explicitly. See G. L. c. 32, § 3 (8) (*c*) (governmental unit "may maintain an action of contract to recover" from another governmental unit contribution toward retirement allowance of member who earned creditable service in both systems); G. L. c. 32, § 7 (4) (*b*) (same, with respect to accidental disability retirement allowance); G. L. c. 32, § 59A (same, with respect to veterans' pensions); G. L. c. 32, § 22 (7) (*c*) (iv) (county, city, or town retirement board "may . . . recover[] in an action of contract" amounts due from governmental unit to support its contributory retirement system); G. L. c. 32, § 91 (*c*) (treasurer or retirement board "may . . . recover[] in an action of contract" against retired member certain excess part-time employment earnings). Where the Legislature used the term "action of contract" elsewhere in G. L. c. 32, but not in § 15, we do not construe proceedings under § 15 as being an action in contract. Cf. *Hollstein* v. *Contributory Retirement Appeal Bd.*, 47 Mass. App. Ct. 109, 111 (1999) (language appearing in one section of G. L. c. 32 should not be read into another section where it does not appear). We thus conclude that a pension forfeiture under § 15 (4) is not an action in contract.

Our conclusion is bolstered by the fact that, although there is a form of contractual relationship between members and their retirement system, the contractual aspects are special and limited. Contractual features of government pensions derive from G. L. c. 32, § 25 (5), which states:

> "The provisions of [G. L. c. 32, §§ 1-28,] shall be deemed to establish and to have established membership in the retirement system as a contractual relationship under which members who are or may be retired for superannuation are entitled to contractual rights and benefits, and no amendments or alterations shall be made that will deprive any such member . . . of [his] pension rights or benefits, . . . if such member . . . [has] paid the stipulated contributions specified in said sections . . . ."

This court has construed § 25 (5) as creating something less than a full contractual relationship, but one that protects the "core" of a member's "reasonable expectations" of "vested

pension rights" against the "gratuity" theory of government pensions that was utilized successfully in the mid-1950's in avoidance of claims of impairment of contract under the State and Federal Constitutions. *Opinion of the Justices*, 364 Mass. 847, 856-862 (1973). See *Madden* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 697, 701 (2000). Thus, under this hybrid system, G. L. c. 32, § 15 (4), and § 25 (5), can be read harmoniously, *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375 (2000), and the board may implement administratively the preexisting pension forfeiture provisions of § 15 (4) without an action in contract.[8]

Finally, we turn to the question whether the Legislature intended any period of limitations to apply to pension forfeitures under G. L. c. 32, § 15 (4), and, if so, which one. Where, as here, the statute does not make reference to any period of limitations, we must inquire whether there is anything in the statute or its legislative history that indicates an express or implied legislative intent that such forfeitures are not time limited. See *Nantucket* v. *Beinecke*, 379 Mass. 345, 348 (1979). Absent such an intent, we look to the nature of the claim to determine which existing statute of limitation most closely is associated with the asserted claim. *Id.* See *Zora* v. *State Ethics Comm'n*, 415 Mass. 640, 647 (1993).

---

[8]In any event the judge incorrectly concluded that the board's implementation of the forfeiture under G. L. c. 32, § 15 (4), which commenced on October 17, 2002, was untimely under G. L. c. 260, § 2, because Woodward was convicted when the jury returned their verdicts on October 2, 1996, more than six years earlier. Section 15 (4) does not define "final conviction."

The term has a specialized technical meaning. "Sentence is final judgment in a criminal case." *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 19 (1923). See *Attorney Gen.* v. *Pelletier*, 240 Mass. 264, 310-311 (1922), quoting *Commonwealth* v. *Kiley*, 150 Mass. 325, 326 (1889) ("conviction" " 'implies a judgment and sentence of the court upon a verdict or confession of guilt.' Mere verdict of guilty is not enough. . . . 'Nothing less than a final judgment, conclusively establishing guilt, will satisfy the meaning of the word "conviction" as here used' "). The same meaning is given to the term in the Federal courts. See *Berman* v. *United States*, 302 U.S. 211 (1937) ("Final judgment in a criminal case means sentence"). The term "final conviction," as it is used in § 15 (4), should be given its specialized technical meaning, see *Simon* v. *State Examiners of Electricians*, 395 Mass. 238, 242-243 (1985), which is the sentence that is imposed in a criminal proceeding. Here, Woodward was not sentenced until February 7, 1997, less than six years from the board's commencement of implementation of forfeiture.

Section 15 (4) states: "*In no event* shall any member after final conviction . . . be entitled to receive a retirement allowance under the provision of [G. L. c. 32, §§ 1-28], inclusive" (emphasis added). The words "[i]n no event" connote the absolute never or "under no circumstances." See *Valenzuela* v. *Brown*, 186 Ariz. 105, 110 (Ct. App. 1996); *Old Lincoln County Mut. Fire Ins. Co.* v. *Justice County Mut. Ins. Co.*, 237 S.W.2d 678, 679 (Tex. Civ. App. 1951). It excludes all discretionary consideration. Indeed, in *MacLean* v. *State Bd. of Retirement*, 432 Mass. 339, 342, 343 (2000), we said that forfeiture under § 15 (4) "is mandatory and occurs by operation of law," and that it "is an automatic legal consequence of conviction of certain offenses." We also said § 15 (4) "does not allow the board any discretion as to the revocation of pension benefits." *Id.* at 351-352. It would be illogical to permit the board to accomplish by inattention or inaction what it is prohibited from doing as a matter of discretion. We conclude that "in no event" is a clear expression of the Legislature's intent that pension forfeiture under § 15 (4) is not subject to any period of limitations.

We answer the third reported question as follows: "The District Court judge erred in concluding that the board's implementation of G. L. c. 32, § 15 (4), resulting in forfeiture of Woodward's retirement allowance, was time barred."

The matter is remanded to the county court for further proceedings consistent with these responses to the reported questions.

*So ordered.*