NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11926


    MICHAEL SKAWSKI & others[1] vs.  GREENFIELD INVESTORS PROPERTY
                    DEVELOPMENT LLC.



        Hampden.      January 7, 2016. - February 11, 2016.

    Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
                          Hines, JJ.



Jurisdiction, Land Court, Housing Court.  Land Court,
     Jurisdiction.  Housing Court, Jurisdiction.  Statute,
     Construction, Repeal.




        Civil action commenced in the Hampden Division of the
Housing Court Department on June 7, 2011.

        A motion to dismiss was heard by Dina E. Fein, J., and the
ruling was reported by her.

        After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.



        Thomas Lesser (Michael E. Aleo with him) for the
plaintiffs.
        Marshall D. Senterfitt (David S. Weiss with him) for the
defendant.
        Isaac J. Mass, for Citizens for Growth, amicus curiae,
submitted a brief.

---

        [1] Melani Skawski; Ralph Gordon, Jr.; Susan Gordon; Joanna W.
Mann; Joanna J. Mann; and Shirley Lowe.

Ashley Grant, for Massachusetts Fair Housing Center, amicus curiae, submitted a brief.

GANTS, C.J.  On August 2, 2006, the Legislature enacted G. L. c. 185, § 3A, which established the permit session of the Land Court department and provided that "[t]he permit session shall have original jurisdiction, concurrently with the superior court department," over civil actions adjudicating the grant or denial of permits for "the use or development of real property" where "the underlying project or development involves either [twenty-five] or more dwelling units or the construction or alteration of 25,000 square feet or more of gross floor area." St. 2006, c. 205, § 15.  At the time § 3A was enacted, G. L. c. 40A, § 17, authorized "[a]ny person aggrieved by a decision of the board of appeals or any special permit granting authority" to appeal to the Land Court, the Superior Court, the Housing Court, or the District Court.[2]  The issue before us is whether the Legislature, by enacting G. L. c. 185, § 3A, intended to grant exclusive subject matter jurisdiction to the permit session of the Land Court and to the Superior Court to

---

[2] A party may only file an appeal in the Housing Court if the land is situated in an area served by a division of the Housing Court and may not file in the District Court if the land is situated in Hampden County.  G. L. c. 40A, § 17, first par. If the appeal is filed in the District Court, "any party shall have the right to file a claim for trial of said appeal in the superior court department within twenty-five days after service on the appeal is completed."  Id.

hear this subset of major development permit appeals, or intended simply to create a permit session in the Land Court to hear these cases without eliminating the subject matter jurisdiction of the Housing Court to adjudicate this subset of appeals. We conclude that the Legislature intended that major development permit appeals should be adjudicated only in the permit session of the Land Court or in the Superior Court. We also conclude that, where the permit appeal in this case was timely filed in the Housing Court in accordance with G. L. c. 40A, § 17, the appropriate remedy is not to dismiss the case for lack of subject matter jurisdiction but to transfer the case to a court with jurisdiction, that is, the permit session of the Land Court or the Superior Court.[3]

Background. The defendant, Greenfield Investors Property Development LLC[4] (developer), seeks to build a retail development of not more than 135,000 square feet of commercial space in Greenfield (project). On May 17, 2011, the planning board of Greenfield (planning board) granted a special permit in favor of the developer to construct the project, subject to various conditions. The notice granting the special permit advised that

---

[3] We acknowledge the amicus curiae briefs submitted by Citizens for Growth and the Massachusetts Fair Housing Center.

[4] The members of the planning board of Greenfield, as required by G. L. c. 40A, § 17, second par., and the planning board itself are also defendants in this action, but they have not been joined as appellants.

"[a]n appeal from the decision of the [p]lanning [b]oard may be made by any person aggrieved pursuant to [G. L. c. 40A, § 17,] . . . within twenty (20) days after the date of filing of a notice of decision in the [o]ffice of the [t]own [c]lerk."

The plaintiffs, who own property abutting the proposed development (abutters), filed a timely appeal to the grant of the special permit in the Housing Court on June 7, 2011. On July 19, 2011, the defendants, without challenging the subject matter jurisdiction of the Housing Court, requested the Chief Justice of the Trial Court[5] to transfer the appeal from the Housing Court to the permit session of the Land Court, pursuant to G. L. c. 185, § 3A. The abutters opposed the motion, and, on August 31, 2011, the then-sitting Chief Justice of the Trial Court denied the motion to transfer, without explanation.

The defendants then filed a motion for summary judgment, claiming that the abutters lacked standing to appeal the grant of the special permit and that their due process allegations failed to state a valid constitutional claim. On January 15, 2013, the judge allowed the motion as to the due process claims

---

[5] At the time of the enactment of G. L. c. 185, § 3A, the Chief Justice of the Trial Court was known as the Chief Justice for Administration and Management. See G. L. c. 211B, § 1, as amended through St. 2011, c. 93, § 49. Section 3A was amended in 2011 only to reflect the change in nomenclature from "chief justice for administration and management" to "chief justice of the trial court." St. 2011, c. 93, §§ 25-26. Although some of the events relevant to this case occurred before the change in title, we use the current title to avoid confusion.

but denied it as to standing, thereby allowing the abutters to proceed with their appeal of the special permit.

On December 28, 2012, the Appeals Court issued its decision in Buccaneer Dev., Inc. v. Zoning Bd. of Appeals of Lenox, 83 Mass. App. Ct. 40, 43-44 (2012) (Buccaneer), where it held that G. L. c. 185, § 3A, deprived the Housing Court of subject matter jurisdiction to hear major development permit appeals. In Buccaneer, the zoning board of appeals (board) denied the special permit for a major housing development and the developer filed an appeal in the permit session of the Land Court. Id. at 40, 42. The board filed a notice in the permit session to transfer the case to the Housing Court, invoking G. L. c. 185C, § 20, which provides that "[a]ny civil action within the jurisdiction of the housing court department which is pending in another [trial] court department may be transferred to the housing court department by any party." Id. at 41. After the case was transferred to the Housing Court, the developer moved that it be remanded to the permit session of the Land Court; the motion was denied, and the board's denial of the special permit was affirmed. Id. The Appeals Court declared that, "[b]y explicitly granting jurisdiction to the permit session and the Superior Court to hear permit-based civil actions involving large-scale projects, the Legislature implicitly denied such jurisdiction to the Housing Court." Id. at 44. The court

vacated the judgment and directed the Housing Court to remand the case to the permit session of the Land Court.  Id. at 45.

On January 25, 2013, the developer in this case, citing the Appeals Court decision in Buccaneer, moved to dismiss the appeal for lack of subject matter jurisdiction.  On February 26, the judge denied the motion but conditioned her denial on allowance of her request for administrative transfer of the case and herself to the Superior Court.  On February 28, the judge wrote a letter to the then-sitting Chief Justice of the Housing Court, requesting, in light of the "uncertainty" created by the Appeals Court decision in Buccaneer and the pending application for further appellate review in that case, that the instant case be transferred administratively to the Superior Court Department and that she be cross-designated and assigned to handle it.  The developer opposed the transfer.  The Housing Court Chief Justice failed to act on the request and, on July 25, the judge withdrew it and thereafter declared her intention to rule on the merits of the motion to dismiss.

On August 27, the judge denied the defendants' motion to dismiss for lack of subject matter jurisdiction.  The judge noted that the procedural posture of this case differed from Buccaneer in that the plaintiffs here had initially filed their appeal in the Housing Court, not the permit session of the Land Court.  The judge distinguished the holding in Buccaneer,

stating that "the Appeals Court ruled effectively that the developer's choice of forum trumped the defendants' right under G. L. c. 185C, § 20[,] to transfer the case to the Housing Court."  The judge declared that the Housing Court had jurisdiction under G. L. c. 40A, § 17, to hear permit appeals and that, where the Chief Justice of the Trial Court[6] had exercised the discretion granted to him under G. L. c. 185, § 3A, to deny the developer's request to transfer the case to the permit session of the Land Court, allowance of the defendants' motion to dismiss "would deprive the plaintiffs entirely of their statutory right to judicial review of the [p]lanning [b]oard's decision."  The judge subsequently granted the joint motion of the parties to report her ruling to the Appeals Court pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996).

The Appeals Court reversed the judge's order denying the defendants' motion to dismiss, concluding that the enactment of G. L. c. 185, § 3A, deprived the Housing Court of subject matter jurisdiction over major development permit appeals.  Skawski v. Greenfield Investors Prop. Dev., LLC, 87 Mass. App. Ct. 903, 905-906 (2015).  We granted the abutters' application for further appellate review.

---

[6] See note 5, supra.

Discussion. General Laws c. 185, § 3A, established the permit session of the Land Court and granted that session "original jurisdiction, concurrently with the superior court department," over major development permit appeals.[7] It also

_____

[7] General Laws c. 185, § 3A, provides in relevant part:

"There shall be established a separate session of the land court department, which shall be known as the permit session of the land court department.

"Sessions of the permit session shall be held in Suffolk, Middlesex, Essex, Norfolk, Plymouth, Worcester and Hampden counties, and other counties as the chief justice of the land court department shall from time to time designate.

"The permit session shall have original jurisdiction, concurrently with the superior court department, over civil actions in whole or part:  (a) based on or arising out of the appeal of any municipal, regional or state permit, order, certificate or approval, or the denial thereof, concerning the use or development of real property, including without limitation appeals of such permits, orders, certificates or approvals, or denials thereof, arising under or based on or relating to [G. L. c. 21; G. L. c. 30, §§ 61 to 62H, inclusive; G. L. cc. 30A, 40A to 40C, inclusive, 40R, 41, 43D, 91, 131, 131A; or G. L. c. 249, §§ 4 and 5; or St. 1956, c. 665]; or any local bylaw or ordinance; . . . but . . . only if the underlying project or development involves either [twenty-five] or more dwelling units or the construction or alteration of 25,000 square feet or more of gross floor area or both.

"Notwithstanding any other general or special law to the contrary, any action not commenced in the permit session, but within the jurisdiction of the permit session as provided in this section, may be transferred to the permit session, upon motion by any party to the chief justice of the trial court. There shall be a presumption against more than one transfer of a case between any departments of the trial court.  If a party to an action commenced in or transferred to the permit session claims a valid right to a jury trial.  Then [sic] the action shall be transferred to the superior court for a jury trial.

provides that, "[n]otwithstanding any other general or special law to the contrary, any action not commenced in the permit session, but within the jurisdiction of the permit session as provided in this section, may be transferred to the permit session, upon motion by any party to the chief justice of the

---

"Each case filed in the permit session shall be assigned to a single judge from the commencement to the conclusion of the case. The judge assigned to the case will hold all hearings and preside at the trial, except in the case of death, disability, expiration of judicial appointment to the permit session or emergency.

". . .

"The chief justice of the land court shall report to the chief justice of the trial court, the clerks of the house and senate, and the chairs of the judiciary committee of the general court on an annual basis, with: (1) the number of cases handled under this session; (2) the timelines achieved in cases pursuant to this session; (3) any additional resources required by the land court to meet its goals for this session; and (4) the number of cases before the land court according to the county from which they originate. To the extent that the chief justice of the land court does not have sufficient resources to maintain the timeframes mentioned above, then the chief justice of the trial court shall assign judges with land use and environmental expertise from other departments of the trial court to sit as justices of the permit session. In making such appointments, the chief justice of the trial court shall make reasonable efforts to select justices who, by reason of their past experience in private practice or practice with public agencies or as jurists have particular skills related to environmental and land use permitting and disputes concerning the same.

"The final disposition of cases in the permit session by the court by dismissal, judgment or otherwise shall be in accordance with the following timeframes which shall commence on the filing of the trial transcript with the court or in the case of a summary judgment motion, from the date the motion is taken under advisement: A Track in 4 months, F Track in 3 months and X Track in 2 months."

trial court."  G. L. c. 185, § 3A, fourth par.  The statute notes, however, that "[t]here shall be a presumption against more than one transfer of a case between any departments of the trial court."  Id.

     1.  Subject matter jurisdiction.  At the time § 3A was enacted in 2006, G. L. c. 40A, § 17, gave subject matter jurisdiction in all permit appeals to the Housing Court, along with the Land Court, Superior Court, and District Court, and G. L. c. 185C, § 20, gave any party the power to transfer such an appeal to the Housing Court if it were not initially filed there.  The question we must grapple with is whether the Legislature, by enacting § 3A, intended to divest the Housing Court of subject matter jurisdiction over what we call major development permit appeals (that is, appeals arising from action on any permit concerning the use or development of real property in projects that involve the construction of twenty-five or more dwelling units or 25,000 square feet or more of gross floor area) and to grant exclusive subject matter jurisdiction over such appeals to the permit session of the Land Court and to the Superior Court.

     We use as our starting point the traditional tools of statutory interpretation.  "It is well established that '[a] statute is not to be deemed to repeal or supersede a prior statute in whole or in part in the absence of express words to

that effect or of clear implication.'" Commonwealth v. Palmer, 464 Mass. 773, 777 (2013), quoting Commonwealth v. Harris, 443 Mass. 714, 725 (2005). The words of § 3A do not explicitly divest the Housing Court of jurisdiction over major development permit appeals. Section 3A makes no reference to G. L. c. 40A, § 17, or to the subject matter jurisdiction over permit appeals granted to the Housing Court by that statute. Nor does it grant "exclusive jurisdiction" over major development permit appeals to the permit session of the Land Court and to the Superior Court; it simply grants these courts "original jurisdiction" over these appeals. Contrast G. L. c. 185, § 1 ("The land court department shall have exclusive original jurisdiction of the following matters: . . ."); G. L. c. 212, § 3 ("The [superior] court shall have exclusive original jurisdiction of civil actions for the foreclosure of mortgages . . .").

Therefore, if § 3A divests the Housing Court of jurisdiction over major development permit appeals, it must do so by "clear implication," see Palmer, supra, that is, implication so clear that it overcomes our "strong presumption against implied repeal of a prior law." Dartmouth v. Greater New Bedford Reg'l Vocational Tech. High Sch. Dist., 461 Mass. 366, 374 (2012). See generally 1A N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 23:10 (7th ed. 2009) (discussing judicially created presumption against repeal

of prior laws by implication).  Implied repeal is clear where "the earlier statute 'is so repugnant to and inconsistent with the later enactment covering the subject matter that both cannot stand.'"  See Dartmouth, supra at 374-375, quoting Doherty v. Commissioner of Admin., 349 Mass. 687, 690 (1965).  It may also be clear where the subsequent legislation comprehensively addresses a particular subject and impliedly supersedes related statutes and common law that might frustrate the legislative purpose.  See id. at 375-376, and cases cited.  See generally 1A N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction, supra at § 23:9 (discussing implied repeal where later legislation covers whole subject of earlier legislation and is intended as substitute).  Ultimately, the touchstone is "the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."  Weems v. Citigroup Inc., 453 Mass. 147, 153 (2009), quoting Boston Police Patrolmen's Ass'n v. Boston, 435 Mass. 718, 720 (2002).

Placing § 3A within the context of the larger legislative enactment illuminates the legislative purpose underlying the statute.  Section 3A is found in one of twenty-four sections in

St. 2006, c. 205 (act), whose purpose is clear from its title, "An Act relative to streamlining and expediting the permitting process in the commonwealth," and its preamble -- "to forthwith expedite the permitting process in the commonwealth." To accomplish this purpose, the Legislature created a comprehensive statutory program that, among other things, (1) provided funding for technical assistance grants to assist State and local governments and agencies in streamlining their permitting processes, St. 2006, c. 205, §§ 2, 6; (2) provided for the appointment of a director of the permit regulatory office within the Executive Office of Economic Development to "serve as the state permit ombudsman to new and expanding businesses, [and] to provide one-stop licensing for businesses and development in order to streamline and expedite the process of obtaining state licenses, permits, state certificates, state approvals, and other requirements of law," id. at § 4; and (3) provided expedited permitting for property designated as a "priority development site," id. at § 11. From the text of the act and its legislative history, it is plain that the Legislature sought to reduce the costs and delays of the permitting process required to conduct business and develop property. See, e.g., State House News Service (Senate Sess.), July 25, 2006 (statement of Sen. Jack Hart) ("the number-one issue of concern to businesses here in the Commonwealth is the long permitting

process.  It may take anywhere from three to five years for a business to get permitted. . . .  We're not trying to supplant the process; we're trying to expedite it").

Section 3A, which is found in § 15 of the act, must be interpreted in light of that legislative purpose.  The abutters contend that the Legislature's purpose in enacting § 3A was to create the permit session in the Land Court to hear these major development permit appeals, not to affect the jurisdiction of other court departments granted by G. L. c. 40A, § 17.  But, if its purpose were simply to create a new permit session in the Land Court, there would be no need to mention the concurrent original jurisdiction of the Superior Court.  By specifying that the Superior Court Department shared concurrent jurisdiction with the permit session of the Land Court, and not also specifying any other court department as having concurrent jurisdiction, the Legislature impliedly reflected its intent that these major development permit appeals be adjudicated only by these two courts.  See Commonwealth v. Russ R., 433 Mass. 515, 521 (2001) ("The Legislature enumerated three courts in the immunity statute, but did not include the Juvenile Court. Accordingly, the Legislature's actions suggest that it intended to exclude the Juvenile Court"); Bagley v. Illyrian Gardens, Inc., 401 Mass. 822, 824-825 (1988), and cases cited ("By explicitly singling out the Hampden County division of the

Housing Court and granting it concurrent jurisdiction over such appeals, the Legislature implicitly denied such jurisdiction to the other divisions of the Housing Court").  See also Tilman v. Brink, 74 Mass. App. Ct. 845, 852-854 (2009) (District Court cannot award attorney's fees under G. L. c. 231, § 6F, because it is not included in statutory definition of "court" under G. L. c. 231, § 6E).  This interpretation is consistent with the statutory maxim, "expressio unius est exclusio alterius," meaning "the expression of one thing in a statute is an implied exclusion of other things not included in the statute."  See Bank of Am., N.A. v. Rosa, 466 Mass. 613, 619 (2013); Bagley, supra.

The comprehensive scope of the act further suggests that the Legislature intended to be equally comprehensive in declaring which court departments would have original jurisdiction to adjudicate major development permit appeals. See Dartmouth, 461 Mass. at 375, quoting Doherty, 349 Mass. at 690 (noting that implied repeal may be found where "the Legislature enacts a law covering a particular field but leaves conflicting prior prescriptions unrepealed").

Moreover, if we were to adopt the abutters' interpretation of § 3A that the Housing Court continues to have jurisdiction to hear these cases, the legislative purpose in having these cases heard by the permit session of the Land Court would be

frustrated because any party could exercise its authority under G. L. c. 185C, § 20, to transfer to the Housing Court any case that was filed in or transferred to the permit session of the Land Court. The establishment of the permit session of the Land Court to hear major development permit appeals was an integral part of the act's over-all plan to expedite the permitting process because § 3A establishes demanding time frames for the final disposition of such appeals in the permit session.[8] See G. L. c. 185, § 3A, sixth and eighth pars. Although a party could file a major development permit appeal in the Superior Court, § 3A allows any party, with the approval of the Chief Justice of the Trial Court, to transfer the appeal to the permit session. See id. at § 3A, fourth par. But, if the Housing Court continued to have jurisdiction over these cases, any party could invoke G. L. c. 185C, § 20, and ensure that the final disposition of the appeal would be decided, not by the permit session, but by the Housing Court.

A careful review of the legislative history suggests that the Legislature's intent regarding jurisdiction over major development permit appeals evolved during the legislative process. Initially, the Joint Committee on Labor and Workforce

---

[8] General Laws c. 185, § 3A, also directs the Chief Justice of the Trial Court to assign justices from other trial court departments with "particular skills related to environmental and land use permitting" to sit in the permit session if the Land Court has insufficient resources to meet these time frames.

Development proposed in the House bill that a separate permit division of the Superior Court be established that "shall have original jurisdiction, concurrently with the Superior Court," over all permit appeals. 2006 House Doc. No. 4741. The bill also provided:

> "Notwithstanding any other General Law to the contrary, any action not commenced in the Permit Division, but within the jurisdiction of the Permit Division . . . , shall be transferred to the Permit Division upon motion by any party to the Chief Justice for Administration of the Trial Courts. There shall be a presumption against more than one transfer of a case between any Departments of the Trial Court." (Emphasis added.)

Id. Under this bill, any party to any permit appeal had the right to transfer the appeal to the permit division. It is doubtful that the proponents of this bill intended to divest the jurisdiction of the Land Court, Housing Court, and District Court over all permit appeals within the jurisdictional scope of G. L. c. 40A, § 17, if only because the presumption against more than one transfer of a case between trial court departments would make no sense if only the Superior Court Department had jurisdiction over these cases. But under this bill, even with no limitation of jurisdiction, a developer could be assured that, if it wanted a permit appeal to be decided in the permit division, the appeal would be decided there.

The House bill was subsequently amended to establish a permit session in the Land Court rather than a permit division

in the Superior Court.  2006 House J. 1659.  This amendment provided that the permit session "shall have original jurisdiction, concurrently with the superior court department," over all permit appeals.  Id. at 1659-1660.  This amended version retained the language providing that, on motion by any party, the Chief Justice of the Trial Court "shall" transfer any permit appeal that was not in the permit session to that session.  Id. at 1660.

The House bill was then further amended in three other important ways.  First, the scope of jurisdiction of the permit session was limited to major development permit appeals; it no longer had jurisdiction over all permit appeals.  2006 House J. 1661.  Second, with respect to a party's motion to transfer an appeal to the permit session, the word "shall" was struck and replaced with "may," thereby giving the Chief Justice of the Trial Court the discretion to allow or deny a motion to transfer.  Id. at 1665.  Third, a provision was added declaring that where a party in the permit session claims a right to a jury trial, "then the action shall have a trial in the superior court."[9]  Id.  See G. L. c. 185, § 25 (Land Court "shall hold no trials by jury"); G. L. c. 186, § 15 (where trial by jury is

_____

[9] This language was later revised before enactment.  General Laws c. 185, § 3A, provides, "If a party to an action commenced in or transferred to the permit session claims a valid right to a jury trial.  Then [sic] the action shall be transferred to the superior court for a jury trial."

claimed, questions of fact resolved in Superior Court). As a result of these amendments, a party to a major development permit appeal no longer has a right to have its case adjudicated in the permit session; it could request such a transfer, but the allowance of that transfer rests in the discretion of the Chief Justice of the Trial Court. See 2006 House J. 1665. And even if the appeal were filed in or transferred to the permit session, it would nonetheless be tried in the Superior Court if any party claimed a right to a jury trial. See id.

We conclude that the clear implication of these amendments is that the Legislature intended that major development permit appeals be adjudicated in the permit session and, if they could not be, either because the Chief Justice of the Trial Court denied the motion to transfer the case to that session or because a party claimed a right to a jury trial, that they be adjudicated in the Superior Court Department, which was the department that had sole jurisdiction over permit appeals under the earlier version of the House bill and concurrent jurisdiction under the later version of that bill. And, once the Legislature gave the Chief Justice of the Trial Court the discretion to deny transfer of cases to the permit session of the Land Court, even where no right to a jury trial was claimed, the only way the Legislature could effectuate this intent was to limit the scope of jurisdiction over these appeals to the permit

session of the Land Court and the Superior Court.[10]  In short, we
conclude that the clear implication of § 3A is that the
Legislature wanted all major development permit appeals to be
adjudicated either in the permit session of the Land Court or in
the Superior Court and therefore limited jurisdiction over these
cases to these courts.

2.  Remedy.  Having concluded that the Housing Court lacks
jurisdiction to decide this major development permit appeal, we
address whether the remedy should be the outright dismissal of

---

[10] The abutters argue that the inclusion in G. L. c. 185,
§ 3A, of the sentence, "There shall be a presumption against
more than one transfer of a case between any departments of the
trial court," demonstrates that the Legislature did not intend
that the permit session of the Land Court and the Superior Court
would have exclusive jurisdiction over major development permit
appeals because there could be multiple transfers of a case only
if there were jurisdiction in more than two trial court
departments.  We recognize that this sentence was originally
included in the House bill, see 2006 House Doc. No. 4741, whose
proponents did not intend to divest jurisdiction over permit
appeals from the Housing Court, but we disagree that its
survival in § 3A suggests that the legislative intent did not
change with the revisions to that bill.  Section 3A grants
discretion to the Chief Justice of the Trial Court to determine
whether to transfer a case from the Superior Court to the permit
session but requires transfer to the Superior Court from the
permit session where there is a claim of a right to a jury
trial.  This sentence creates a presumption that discretionary
transfer to the permit session should not be granted if a party
earlier exercised its right to transfer an appeal from the
permit session to the Superior Court by claiming a right to a
jury trial and then sought to return to the permit session after
waiving its right to a jury trial.

the case, or transfer to a court with jurisdiction to decide it. We conclude that transfer is the fair and appropriate remedy.[11]

The developer contends that the permit appeal should be dismissed for lack of jurisdiction and that, if the abutters wish to appeal the grant of the special permit, they should be required to refile their complaint in a court with jurisdiction. The developer also made clear at oral argument, however, that were the abutters to refile, it would move to dismiss the refiled complaint as untimely, because G. L. c. 40A, § 17, requires that any such appeal be filed within twenty days after the planning board filed the notice of decision in the office of the town clerk, which occurred in 2011. The result would be that the permit appeal would be procedurally barred, and the merits of the appeal would never be reached by a court.

---

[11] The Appeals Court declined to address the question of transfer or the possibility of the abutters refiling their appeal in either the Land Court or the Superior Court, concluding that "[t]hese questions are outside of the bounds of the reported question and were not made below." Skawski v. Greenfield Investors Prop. Dev., LLC, 87 Mass. App. Ct. 903, 906 n.9 (2015). We disagree. The judge's report brings before us the entirety of her ruling on the motion to dismiss, and the question of remedy -- transfer as an alternative to dismissal -- is intimately and necessarily tied to that ruling. Moreover, it is plain from the judge's earlier request to transfer the case and from the express language of the judge's ruling that she was concerned that dismissal of the action for lack of jurisdiction might have the consequence of denying the abutters the opportunity to litigate the merits of their appeal. In these circumstances it would not serve the interests of justice to avoid deciding this issue and leave it to be decided below, where it could, and likely would, be the subject of yet another appeal and further delay.

We have long rejected dismissal in comparable circumstances.  "[W]hen a court of limited jurisdiction is confronted with a case over which its jurisdiction is doubtful or lacking, the court should not dismiss the case out of hand; rather, 'the proper procedure is for the judge to ask the Chief Administrative Justice to transfer the case, or the judge, or both, to the appropriate department of the Trial Court.'"  Arno v. Commonwealth, 457 Mass. 434, 446 (2010), quoting Konstantopoulos v. Whately, 384 Mass. 123, 129 (1981).  Thus, in ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 607-608 (2000), where we concluded that the District Court lacked jurisdiction over a summary process action it had adjudicated, we stayed the order of dismissal to allow time for the judge to apply to the Chief Justice for Administration and Management to "appoint the District Court judge to sit as a Superior Court judge for the purposes of this case."  Similarly, in Konstantopoulos, supra at 130, 138, where we concluded that the Probate Court lacked jurisdiction to review the revocation of an entertainment license, we did not dismiss the case but instead remanded the case to the Probate Court "with instructions to the judge to ask the Chief Administrative Justice to transfer the case, or the judge, or both to the Superior Court."

Dismissal would be especially unfair here, where the abutters timely filed their appeal in a court that appeared at

the time to have jurisdiction under G. L. c. 40A, § 17; where the defendants did not challenge the Housing Court's jurisdiction until the Appeals Court issued its opinion in the Buccaneer case in 2012, eighteen months after the appeal was filed and well after the abutters might have filed a timely new appeal in the Land Court or Superior Court; and where our conclusion regarding the absence of jurisdiction in the Housing Court rests principally on the doctrine of implied repeal rather than the express language of § 3A.

Conclusion.  The order denying the defendants' motion to dismiss is hereby vacated, and the case is remanded to the Housing Court, where the parties are to be given an opportunity to apply within thirty days to the Chief Justice of the Trial Court to have the case transferred either to the permit session of the Land Court or to the Superior Court.[12]  The Chief Justice of the Trial Court will act on that request forthwith.  Once the case is transferred, it should proceed expeditiously in the court selected by the Chief Justice, so that the parties may obtain a prompt decision on the merits.

So ordered.

---

[12] We note that on March 23, 2015, shortly after filing their application for further appellate review, the abutters made a written request to the Chief Justice of the Trial Court, pursuant to G. L. c. 185, § 3A, and G. L. c. 211B, § 9, for such a transfer.  That request has not been acted on while this appeal has been pending.