ROBERT D. HERRICK vs. ESSEX REGIONAL RETIREMENT
BOARD & another.[1]

Essex. March 5, 2013. - July 15, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Public Employment,* Retirement benefits, Forfeiture of pension. *Judgment,*
Interest. *Practice, Civil,* Interest. *Municipal Corporations,* Pensions. *County,*
Retirement board. *Contract,* Damages.

A member of a public employee contributory retirement system was not
entitled to prejudgment interest on a retroactive award of superannuation
retirement benefits at a rate of twelve percent per annum either pursuant to
G. L. c. 231, § 6C, where judicial review of the forfeiture of the plaintiff's
pension was based on something less than a contractual obligation [804-806];
or pursuant to G. L. c. 231, § 6H, given that another rate of interest, i.e.,
the interest rate that will yield the actuarial equivalent as defined in G. L.
c. 32, § 1, has been otherwise provided by law under G. L. c. 32, § 20 (5)
(c) (2), i.e., the provision that applies when a retirement board makes an
error regarding a benefit determination or calculation [807-808]; further,
this court concluded that G. L. c. 32, § 20 (5) (c) (2), provides a remedy
for all errors made by a retirement board that affect the amount of benefits
a member or beneficiary receives, allowing the error to be corrected so that
members and beneficiaries receive the actuarial equivalent of the benefits
they would have received had the board not erred [808-809].

CIVIL ACTION commenced in the Superior Court Department on
March 24, 2005.

Following review by the Appeals Court, 77 Mass. App. Ct.
645 (2010), a motion for assessment of damages was heard by
*Howard J. Whitehead,* J., and corrected judgment was entered
by him.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Michael Sacco* for Essex regional retirement board.

*H. Ernest Stone* for the plaintiff.

[1]Contributory Retirement Appeal Board.

GANTS, J. The questions on appeal are whether plaintiff Robert Herrick, a member of a public employee contributory retirement system governed by G. L. c. 32, §§ 1-28, inclusive, is entitled to prejudgment interest on a retroactive award of superannuation retirement benefits and, if so, at what rate of interest. We hold that the plaintiff is not entitled to interest at a rate of twelve per cent per annum pursuant to G. L. c. 231, § 6C, because his suit was not an action "based on contractual obligations." We further hold that the plaintiff is not entitled to twelve per cent annual interest pursuant to G. L. c. 231, § 6H, because interest in this case is "otherwise provided by law" under G. L. c. 32, § 20 (5) (c) (2). We interpret § 20 (5) (c) (2) to provide that, where, as here, a retirement board makes a legal error in denying retirement benefits that is corrected by a court, the plaintiff is entitled to a rate of interest determined by the board's actuary "so that the actuarial equivalent of the pension or benefit to which the member or beneficiary was correctly entitled shall be paid."

*Background.* The plaintiff worked for twenty-seven years as a custodian and maintenance mechanic for the Wenham Housing Authority and was a member of the Essex regional retirement system.[2] On May 1, 2003, he was charged with sexually assaulting his daughter and, that same day, resigned his position. On May 6, he submitted an application for voluntary superannuation retirement pursuant to G. L. c. 32, § 5 (1) (a). On May 15, he pleaded guilty to two counts of indecent assault and battery on a child under fourteen years of age, and was sentenced to two and one-half years in a house of correction, eighteen months of which to serve. Although he met the age and service time requirements to be eligible for superannuation retirement benefits, the Essex regional retirement board[3] (board) on June 27, 2003, voted to deny his application pursuant to G. L. c. 32,

---

[2]Employees of towns with fewer than 10,000 inhabitants who are pension-eligible and not teachers become members of the county retirement system. G. L. c. 32, § 28 (3) (b).

[3]"Each of the several retirement systems, State, county, city or town, is in general an independent unit, having its own separate assets and liabilities and is under the jurisdiction of its own separate board." *O'Connor* v. *Bristol County*, 329 Mass. 741, 746 (1953). See G. L. c. 32, § 20.

§ 10 (1), based on a finding of forfeiture due to moral turpitude.[4]
On July 14, 2004, after a hearing, an administrative magistrate
of the division of administrative law appeals issued an order
affirming the board's denial of the plaintiff's application for
superannuation retirement benefits. On February 18, 2005, the
Contributory Retirement Appeal Board (CRAB) accepted the
administrative magistrate's findings of fact and affirmed her
decision.

The plaintiff sought judicial review pursuant to G. L. c. 30A,
§ 14. In June, 2009, a Superior Court judge reversed CRAB's
decision and entered judgment for the plaintiff, directing the
board to grant the plaintiff's application for superannuation
retirement benefits, retroactive to the date of his resignation.
The judge found that the board and CRAB made an error of
law in their interpretation of G. L. c. 32, § 10 (1), concluding
that a member of a retirement system forfeits his retirement
benefits under § 10 (1) where the member is "removed or
discharged from his office or position" because of the member's
moral turpitude, not where, as here, the plaintiff voluntarily
resigned his position. The judge determined that a member who
resigns his position is entitled to superannuation retirement
benefits for which he qualifies regardless of whether his resigna-
tion was motivated by the member's moral turpitude or by the
likelihood that his misconduct will lead to an involuntary
discharge. The Appeals Court affirmed the judgment. See *Her-
rick* v. *Essex Regional Retirement Bd.*, 77 Mass. App. Ct. 645,
655 (2010).

---

[4]Prior to its amendment in 2009, see St. 2009, c. 21, §§ 9-11, G. L. c. 32,
§ 10 (1), provided:

"Any member classified in Group 1, Group 2 or Group 4 who after
completing twenty or more years of creditable service, resigns or
voluntarily terminates his service, or fails of nomination or re-election,
or fails of reappointment, or whose office or position is abolished, or is
removed or discharged from his office or position without moral turpitude
on his part, or any member who, after having attained age fifty-five,
resigns, or fails of nomination or re-election, or fails to become a
candidate for nomination or re-election, or fails of reappointment or is
removed or discharged from his office or position without moral turpitude
on his part, or any such member whose office or position is abolished,
shall, upon his written application on a prescribed form filed with the
board, receive a superannuation retirement allowance . . . ."

Subsequently, the board on March 31, 2011, issued a check to the plaintiff for $191,165.76, which represented his super-annuation retirement benefits retroactive to the date of his resignation, but did not include any interest thereon. The plaintiff then filed a motion in the Superior Court, claiming that he was entitled to interest on the retroactive payment pursuant to G. L. c. 231, § 6C, at the rate of twelve per cent per annum. A judge concluded that § 6C applied and ordered that "interest be awarded at the rate of [twelve per cent] on each amount of plaintiff's unpaid benefits commencing from the date that such amount became payable." The judge later clarified that he regarded each past failure of the board to pay the plaintiff his monthly retirement benefit as a breach of contract, so that the plaintiff was entitled to twelve per cent simple interest on each unpaid monthly payment from the date that payment was due. The board appealed the judge's award of interest, the case was entered in the Appeals Court, and we transferred it to this court on our own motion.

*Discussion.* General Laws c. 30A, § 14, which provides for judicial review of the final decisions of agencies in adjudicatory proceedings, is silent as to the question of interest where an agency decision denying the payment of money is reversed. Section 14 (7) provides only that the reviewing court "may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced."

The plaintiff contends, and the judge ruled, that he is entitled to the award of interest under G. L. c. 231, § 6C, which provides, in part:

> "In all actions *based on contractual obligations*, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand" (emphasis added).

By its terms, § 6C only applies to an action "based on contractual obligations." A contractual obligation may be created by an agreement or be imposed by statute, and § 6C applies to

contracts derived from both sources. *Lexington* v. *Bedford*, 378 Mass. 562, 576 (1979). The plaintiff claims that he has a contractual right to his retirement benefits that is imposed by G. L. c. 32, § 25 (5), which provides:

> "*Effect of Amendments or Repeal.* — The provisions of sections one to twenty-eight, inclusive, and of corresponding provisions of earlier laws shall be deemed to establish and to have established membership in the retirement system as a contractual relationship under which members who are or may be retired for superannuation are entitled to contractual rights and benefits, and no amendments or alterations shall be made that will deprive any such member or any group of such members of their pension rights or benefits provided for thereunder, if such member or members have paid the stipulated contributions specified in said sections or corresponding provisions of earlier laws."

In *Opinion of the Justices*, 364 Mass. 847, 856-860 (1973), we declared that § 25 (5) was intended to reject the thesis suggested by a number of cases that contributory retirement plans were "State-granted gratuities" that did not establish contractual relationships with vested rights constitutionally protected against subsequent legislation reducing or eliminating retirement benefits. "The minimal meaning of this change is that the 'contract' is formed when a person becomes a member by entering the employment, and he is entitled to have the level of rights and benefits then in force preserved in substance in his favor without modification downwards." *Id.* at 860. We added:

> " 'Contract' . . . should be understood here in a special, somewhat relaxed sense. . . . It is not really feasible —nor would it be desirable — to fit so complex and dynamic a set of arrangements as a statutory retirement scheme into ordinary contract law which posits as its model a joining of the wills of mutually assenting individuals to form a specific bargain. As the commentators show, a retirement plan for public employees does not readily submit itself to analysis according to Professor Williston's canons. . . . When, therefore, the characterization 'contract' is used, it is best understood as meaning that the retirement scheme has

generated material expectations on the part of employees and those expectations should in substance be respected."

*Id.* at 861. In contrast with a traditional contract, the contractual commitment provided in § 25 (5) "protects the member of a retirement plan in the core of his reasonable expectations, but not against subtractions which, although possibly exceeding the trivial, can claim certain practical justifications." *Id.* at 862. Therefore, § 25 (5) creates "something less than a full contractual relationship, but one that protects the 'core' of a member's 'reasonable expectations' of 'vested pension rights.' " *State Bd. of Retirement* v. *Woodward*, 446 Mass. 698, 706 (2006), quoting *Opinion of the Justices, supra* at 856-862.

In the *Woodward* case, we noted that, "[w]here the Legislature intended to give a retirement board . . . an 'action in contract' under G. L. c. 32, it did so explicitly." *Id.* at 705-706, and statutes cited. We held in that case that a pension forfeiture is not an action in contract, and we therefore concluded that the State Board of Retirement had the authority to forfeit the pension of a convicted public official after the expiration of the six-year statute of limitations for contract actions.[5] *Id.* at 706. Where the forfeiture of a pension is not an action in contract, an action challenging the lawfulness of the forfeiture of a pension is also not an action in contract. See *id.* Cf. *Robinson* v. *Teachers' Retirement Bd.*, 414 Mass. 340, 342 (1993) (nothing in G. L. c. 32 suggests that claims for accidental death benefits are contractual). Therefore, we conclude that interest may not be awarded under G. L. c. 231, § 6C, because judicial review of the board's decision to forfeit the plaintiff's pension is based on "something less" than a contractual obligation.[6]

---

[5] The pension forfeiture in *State Bd. of Retirement* v. *Woodward*, 446 Mass. 698, 700 (2006), was required by G. L. c. 32, § 15 (4), which provides in pertinent part, "In no event shall any member after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance under the provisions of section one to twenty-eight, inclusive . . . ."

[6] The judge believed that he was bound to award interest under G. L. c. 231, § 6C, by what he understood to be the controlling authority in *Thibodeau* v. *Seekonk*, 52 Mass. App. Ct. 69 (2001) (*Thibodeau II*). The plaintiff in that case had been demoted to a lieutenant from his position as captain in the Seekonk fire department, but the department failed to provide the local retire-

The plaintiff on appeal contends, in the alternative, that he is entitled to an award of interest under G. L. c. 231, § 6H.[7] Section 6H is a catch-all interest provision that applies to "any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law," and provides for interest at twelve per cent per annum calculated from the commencement of the suit. G. L. c. 231, § 6H.[8] See G. L. c. 231, § 6B. By its terms, therefore, § 6H does not apply if interest is "otherwise provided by law." We conclude that § 6H does not apply to this judgment because another rate of interest

---

ment board with the written notice then required under G. L. c. 32, § 16 (2), as amended through St. 1982, c. 630, § 21, and repealed by St. 1996, c. 306, § 19, thereby rendering the demotion ineffective. *Thibodeau* v. *Seekonk*, 40 Mass. App. Ct. 367, 367-368 (1996) (*Thibodeau I*). After the Appeals Court determined in *Thibodeau I* that the plaintiff was entitled to restoration to his position as fire captain and the back pay he would have earned in that position, see *id.* at 372, the primary issue in *Thibodeau II* was whether he was entitled to twelve per cent interest on that award from the date of his demotion under § 6C or from the date of filing of his complaint under § 6H. *Thibodeau II*, *supra* at 72. The Appeals Court held that the plaintiff was entitled to an interest award under § 6C. *Id.* at 73-74. In contrast with the instant case, the damages at issue in *Thibodeau II* were back pay, not retirement benefits, and the statute at issue included a remedy provision that expressly stated that a wronged employee should be restored to his former position "without loss of compensation." *Id.* at 72. Given these quite different circumstances, we conclude that the judge's ruling should not have been controlled by the holding in *Thibodeau II*. In any event, the holding is not controlling on this court.

[7]The plaintiff did not argue in the Superior Court that he was entitled to an award of interest under G. L. c. 231, § 6H; nor did the judge address § 6H in his order awarding interest. Although we generally deem issues that are not argued below to be waived, see *Carey* v. *New England Organ Bank*, 446 Mass. 270, 285 (2006), we will address whether § 6H applies to this action because the issue is of importance to the thousands of members of the Commonwealth's various contributory retirement systems and was fully briefed by the parties. See *Cottam* v. *CVS Pharmacy*, 436 Mass. 316, 323 (2002).

[8]General Laws c. 231, § 6H, provides:

> "In any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law, there shall be added by the clerk of court to the amount of damages interest thereon at the rate provided by section six B to be determined from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law."

General Laws c. 231, § 6B, provides for a twelve per cent annual interest rate.

— the interest rate that will yield the "actuarial equivalent," as defined in G. L. c. 32, § 1[9] — has been "otherwise provided by law" under G. L. c. 32, § 20 (5) (*c*) (2), which applies when a retirement board makes an error regarding a benefit determination or calculation.[10]

By enacting § 20 (5) (*c*) (2), the Legislature "recognize[d] that, in a complicated system of this type, errors are bound to occur." *Boston Retirement Bd.* v. *McCormick*, 345 Mass. 692, 698 n.5 (1963). While the statute speaks of errors in record-keeping and computation, its overriding purpose is to enable a retirement board to correct an honest error by putting members and beneficiaries in the same position they would have been had the error not been made. Cf. *Bianchi* v. *Retirement Bd. of Somerville*, 359 Mass. 642, 650 (1971) ("The error in the present case was that of the board, and that error can readily and fairly be corrected now without prejudice to the board, [the decedent's] estate or the widow"); *Boston Retirement Bd.* v. *McCormick*, *supra* at 698 ("We see nothing in the statute which prevents a member from receiving those benefits because of an honest error which can readily and fairly be corrected"). Under the plain meaning of the statute, where a retired public employee receives a lesser amount of retirement benefits because of a record-keeping or computational error made by a retirement board, the retiree, once the error is discovered, shall receive the actuarial equivalent of the pension to which he is correctly entitled. We see no reason why the Legislature would have intended the corrective action by the board to be any different where the retired public employee erroneously was deprived of all his retirement

---

[9]The "actuarial equivalent" is defined in G. L. c. 32, § 1, as "any benefit of equal value when computed upon the basis of a mortality table to be selected by the actuary and an interest rate determined by the actuary."

[10]General Laws c. 32, § 20 (5) (*c*) (2), provides, in pertinent part:

"When an error exists in the records maintained by the system or an error is made in computing a benefit and, as a result, a member or beneficiary receives from the system more or less than the member or beneficiary would have been entitled to receive had the records been correct or had the error not been made, the records or error shall be corrected . . . as far as practicable, and future payments shall be adjusted so that the actuarial equivalent of the pension or benefit to which the member or beneficiary was correctly entitled shall be paid."

benefits and where the board's error was an error of law rather than of record-keeping or computation. Therefore, we interpret § 20 (5) (c) (2) to provide a remedy for *all* errors made by the board that affect the amount of benefits a member or beneficiary receives, allowing the error to be corrected so that members and beneficiaries receive the actuarial equivalent of the benefits they would have received had the board not erred. Because the board's actuary must determine an appropriate interest rate to yield the actuarial equivalent, the interest rate must be determined by the board, not the court clerk, on remand from a reversal of a board's decision under G. L. c. 30A.

*Conclusion.* For these reasons, we reverse the judgment awarding twelve per cent simple interest under G. L. c. 231, § 6C, on the retroactive award of superannuation retirement benefits, and order that the case be remanded to the Superior Court for entry of a judgment directing the board forthwith to determine the rate of interest that will yield the "actuarial equivalent of the pension or benefit" to which the plaintiff was correctly entitled under G. L. c. 32, § 20 (5) (c) (2), and to make a one-time, lump-sum payment to the plaintiff amounting to the difference between that actuarial equivalent and the $191,165.76 that has already been paid.

*So ordered.*