NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11971

  SALVATORE F. DiMASI  vs.  STATE BOARD OF RETIREMENT & others.[1]


        Suffolk.      February 9, 2016. - April 21, 2016.

   Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
                         Hines, JJ.


Public Employment, Forfeiture of retirement benefits.
     Retirement.  State Board of Retirement.  Contribution.
     Words, "Final conviction."



     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on June 16, 2014.

     The case was reported by Cordy, J.


     Thomas R. Kiley for the plaintiff.
     David R. Marks, Assistant Attorney General, for the
defendants.


     SPINA, J.  After the plaintiff, Salvatore F. DiMasi, was

convicted of several violations of Federal law, the State Board

of Retirement (board) unanimously approved the forfeiture of his

retirement allowance in accordance with G. L. c. 32, § 15 (4),

_____

     [1] Justices of the Boston Municipal Court Department, as
nominal parties.

and a judge in the Boston Municipal Court Department affirmed the board's decision.  DiMasi filed a complaint for relief in the nature of certiorari pursuant to G. L. c. 249, § 4, in the Supreme Judicial Court for Suffolk County.  A single justice reserved and reported the case for determination by the full court.  DiMasi contends that a "final conviction" of a criminal offense for purposes of § 15 (4) occurs at the conclusion of the appellate process, not when a sentence is imposed.  He further contends that the board improperly has withheld his accumulated total deductions since September, 2011.  For the reasons that follow, we conclude that, in the context of pension forfeiture, a "final conviction" occurs when an individual is sentenced.  We further conclude that DiMasi is entitled to the return of his accumulated total deductions, together with interest on such deductions from September, 2011, until such time as payment is made.

1.  Statutory framework.  The provisions of G. L. c. 32, § 15, "pertain to dereliction of duty by a member of the contributory retirement system for public employees (member)."  See State Bd. of Retirement v. Bulger, 446 Mass. 169, 170 (2006) (Bulger).  General Laws c. 32, § 15 (4), states as follows:

> "In no event shall any member after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance under the provisions of [§§ 1-28], inclusive, nor shall any beneficiary be entitled

to receive any benefits under such provisions on account of such member.  The said member or his beneficiary shall receive, unless otherwise prohibited by law, a return of his accumulated total deductions; provided, however, that the rate of regular interest for the purpose of calculating accumulated total deductions shall be zero"[2] (emphasis added).

This statutory provision applies to criminal offenses committed on or after its effective date of January 12, 1988.  See St. 1987, c. 697, §§ 47, 135.  "Forfeiture of a retirement allowance pursuant to G. L. c. 32, § 15 (4), is 'mandatory and occurs by operation of law . . . .  [It] is an automatic legal consequence of conviction of certain offenses.'"  Retirement Bd. of Somerville v. Buonomo, 467 Mass. 662, 663-664 (2014) (Buonomo), quoting State Bd. of Retirement v. Woodward, 446 Mass. 698, 705 (2006) (Woodward).  Such forfeiture is intended to deter misconduct by public employees, protect the public fisc, and

_____

[2] "A public employee's pension is made up of two components. The first component is 'regular deductions,' G. L. c. 32, § 1, also known as 'employee contributions,' G. L. c. 32, § 22 (1) (b), . . . which are deducted from employee pay.  The 'regular interest' on those deductions, G. L. c. 32, § 1, see G. L. c. 32, § 22 (6) (a), (b), and the regular deductions comprise the employee's 'accumulated total deductions.'  G. L. c. 32, § 1.  The accumulated total deductions are then invested in an investment account.  The second component is made up of the 'employer contributions,' see G. L. c. 32, § 22 (3), which are also invested.  At retirement, the employee receives a 'retirement allowance' consisting of an 'annuity,' funded by the accumulated total deductions, and a 'pension,' funded by employer contributions and earnings.  G. L. c. 32, § 1." Haverhill Retirement Sys. v. Contributory Retirement Appeal Bd., 82 Mass. App. Ct. 129, 130 n.2 (2012).  Payment of a retirement allowance is made monthly, on the last business day of each month.

preserve respect for government service.  See MacLean v. State
Bd. of Retirement, 432 Mass. 339, 351 (2000).

2.  Factual and procedural background.  The facts are taken
from the parties' joint statement of agreed material facts,
which we have supplemented with undisputed facts from the
record.  DiMasi, a former Speaker of the Massachusetts House of
Representatives, resigned from that position on January 27,
2009.  He filed an application with the board on February 11,
2009, seeking a superannuation retirement allowance pursuant to
G. L. c. 32, § 5.  The board approved DiMasi's application and
began to pay him monthly retirement benefits as of February 27,
2009.[3]

On June 2, 2009, a Federal grand jury indicted DiMasi in
the United States District Court for the District of
Massachusetts, alleging various violations of Federal laws.[4]  The

---

[3] When Salvatore F. DiMasi retired, his annuity savings
account contained $155,155.20, consisting of $127,010.05 in
employee contributions and $28,145.15 in interest through the
year 2008.

[4] DiMasi was indicted on three counts of devising a scheme
to deprive the public of its right to honest services through
the use of the mail (honest services mail fraud), 18 U.S.C.
§§ 1341, 1346 (2006); four counts of devising a scheme to
deprive the public of its right to honest services through the
use of wire transmissions (honest services wire fraud), 18
U.S.C. §§ 1343, 1346 (2006); and one count of conspiracy to
commit mail and wire fraud, 18 U.S.C. § 371 (2006).  A
superseding indictment filed on October 13, 2009, added one
count of extortion under color of official right, 18 U.S.C.
§ 1951 (2006).

indictment pertained to criminal acts purportedly committed by DiMasi while in the performance of his official duties.[5]  On June 9, 2009, the board notified DiMasi that it had received information pertaining to the indictment, that it was initiating a proceeding to review the Federal charges in conjunction with G. L. c. 32, § 15, and that it would be withholding further payments of his retirement allowance.  The board subsequently voted to suspend DiMasi's retirement allowance, effective November 1, 2009.

DiMasi filed a petition in the Boston Municipal Court seeking judicial review of the board's decision.  On July 13, 2010, summary judgment entered in favor of DiMasi.  A judge determined, in part, that the existence of the indictment, standing alone, did not provide a sufficient basis for concluding that the charges against DiMasi were true, and that the board did not have the authority under G. L. c. 32, § 15, to temporarily withhold DiMasi's retirement benefits in the circumstances of this case.  Accordingly, the judge ordered the board to resume the payment of DiMasi's retirement allowance and to pay him the amounts that had been withheld.  On September 7,

---

[5] More specifically, the indictment alleged that DiMasi orchestrated and participated in a scheme to use his authority and influence as Speaker of the Massachusetts House of Representatives improperly to enable a computer software company to secure multimillion dollar procurement contracts from agencies of the Commonwealth, with the purpose of obtaining bribes and kickbacks for himself and several coconspirators.

2010, the board appealed that decision by filing a complaint for relief in the nature of certiorari pursuant to G. L. c. 249, § 4, in the Supreme Judicial Court for Suffolk County. A single justice ordered the matter transferred to the Superior Court in accordance with G. L. c. 211, § 4A, for disposition.

In the spring of 2011, a Federal trial was held on the criminal charges against DiMasi and several alleged coconspirators. See notes 4 and 5, supra. On June 15, 2011, the jury found DiMasi guilty of seven counts of the superseding indictment, and not guilty of two other counts.[6] The board filed an "emergency" motion in the pending action that had been transferred by the single justice to the Superior Court, seeking, among other things, to suspend DiMasi's retirement allowance and to place the benefits that he was owed into an escrow account. Following a hearing, a Superior Court judge denied the board's motion. The judge concluded that because DiMasi had not yet been sentenced, there was no final conviction that mandated the forfeiture of his retirement allowance under G. L. c. 32, § 15.

---

[6] DiMasi was found guilty of two counts of honest services mail fraud, three counts of honest services wire fraud, one count of conspiracy to commit mail and wire fraud, and one count of extortion under color of official right. See note 4, supra. He was found not guilty of one count of honest services mail fraud and one count of honest services wire fraud. See id.

On September 9, 2011, DiMasi was sentenced in the United States District Court for the District of Massachusetts to ninety-six months in a Federal prison.[7] As a consequence, the board voted at a special meeting held on September 15, 2011, to suspend payment of DiMasi's retirement allowance, commencing with the September 30, 2011, payment. A judgment of conviction against DiMasi was entered in the Federal court on September 27, 2011. The following day, DiMasi filed a notice of appeal in the United States Court of Appeals for the First Circuit.

On October 18, 2011, DiMasi filed in the Boston Municipal Court a petition for review of the board's September 15 decision to suspend his retirement benefits without first conducting a hearing. A hearing officer for the board subsequently held an evidentiary hearing on November 2, 2011, concerning the applicability of G. L. c. 32, § 15, to DiMasi's retirement allowance. By decision dated August 8, 2012, the hearing officer found that because DiMasi's criminal convictions involved violations of the laws applicable to his office or position, the pension forfeiture provisions of G. L. c. 32, § 15 (4), were applicable to his case. The hearing officer stated that DiMasi's convictions became "final" for purposes of § 15 (4) when he was sentenced on September 9, 2011. Consequently,

---

[7] DiMasi's sentences also included twenty-four months of supervised release, the forfeiture of $65,000, and a special assessment of $700.

the hearing officer continued, DiMasi forfeited his retirement allowance as of that date.  The hearing officer further found that pursuant to § 15 (4), DiMasi was entitled to the return of his accumulated total deductions, but the interest rate applicable to such deductions was zero per cent.  Finally, the hearing officer stated that the board was not entitled to recoup retirement payments made to DiMasi before September 9, 2011, because G. L. c. 32, § 15 (6),[8] is only applicable to members who retire on or after April 2, 2012, and DiMasi retired on January 27, 2009.  The board unanimously voted to accept the hearing officer's decision at its meeting on August 30, 2012.

On October 18, 2012, DiMasi filed another petition for review in the Boston Municipal Court.[9]  He asserted that the board improperly terminated his retirement allowance because there was no "final conviction" within the meaning of G. L. c. 32, § 15 (4), given that he had not yet exhausted his direct appeals.  DiMasi also asserted that the board had failed to

---

[8] General Laws c. 32, § 15 (6), inserted by St. 2011, c. 176, § 31, provides:  "If a member's final conviction of an offense results in a forfeiture of rights under this chapter, the member shall forfeit, and the board shall require the member to repay, all benefits received after the date of the offense of which the member was convicted" (emphasis added).  This section "shall apply only to members retiring on or after April 2, 2012."  St. 2011, c. 176, § 65.

[9] The petition for review filed in the Boston Municipal Court Department on October 18, 2012, incorporated by reference the pertinent allegations set forth in the petition for review filed on October 18, 2011.

return his accumulated total deductions as required by § 15 (4). The board filed the administrative record as its answer. On November 22, 2013, DiMasi filed a motion for summary judgment.

Meanwhile, on August 21, 2013, the United States Court of Appeals for the First Circuit affirmed DiMasi's criminal convictions and sentences. His subsequent petitions for rehearing were denied. On January 27, 2014, the United States Supreme Court denied DiMasi's petition for a writ of certiorari.

By decision dated April 17, 2014, a judge in the Boston Municipal Court denied DiMasi's motion for summary judgment and affirmed the board's August 30, 2012, decision. The judge pointed out that the only matter of dispute between the parties was when DiMasi's convictions became "final" for purposes of G. L. c. 32, § 15 (4). After considering the language and intent of the statute, the judge agreed with the board that the term "final" meant the date when DiMasi was sentenced -- September 9, 2011 -- and not the date when all of his direct appeals were exhausted -- January 27, 2014.

3. Standard of review. "General Laws c. 249, § 4, provides for limited judicial review in the nature of certiorari to correct errors of law in administrative proceedings where judicial review is otherwise unavailable." Bulger, 446 Mass. at 173. See Sheriff of Plymouth County v. Plymouth County Personnel Bd., 440 Mass. 708, 710 (2004). Certiorari allows a

court to "correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff. . . . In its review, the court may rectify only those errors of law which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public." Massachusetts Bay Transp. Auth. v. Auditor of the Commonwealth, 430 Mass. 783, 790 (2000), quoting Carney v. Springfield, 403 Mass. 604, 605 (1988).

4. "Final conviction" of a criminal offense. "Our analysis of G. L. c. 32, § 15 (4), is guided by the familiar principle that 'a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'" Buonomo, 467 Mass. at 668, quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934). See Sullivan v. Brookline, 435 Mass. 353, 360 (2001), and cases cited. "Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense." Buonomo, supra. "For purposes of statutory construction, G. L. c. 32, § 15 (4), is

considered to be penal and, therefore, its language must be construed narrowly, not stretched to accomplish an unexpressed result." Bulger, 446 Mass. at 174-175. See Gaffney v. Contributory Retirement Appeal Bd., 423 Mass. 1, 3 n.3 (1996), citing Collatos v. Boston Retirement Bd., 396 Mass. 684, 686-687 (1986).

The statutory provisions governing retirement benefits for public employees do not include a definition of the term "final conviction" of a criminal offense. See G. L. c. 32, §§ 1, 15. However, it is well established that, "[i]n criminal cases, the final judgment is the sentence." Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 621 (2011). See Commonwealth v. Brown, 466 Mass. 676, 679 (2013) (criminal conviction not final under Massachusetts law until sentence is imposed on defendant); Commonwealth v. Dascalakis, 246 Mass. 12, 19 (1923). See also Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 54 (1989) (finality in criminal prosecution generally "is defined by a judgment of conviction and the imposition of a sentence"); Berman v. United States, 302 U.S. 211, 212 (1937).

The applicability of this common meaning of finality to a pension forfeiture case initially was described in Woodward, 446 Mass. at 707 n.8. There, this court held, in relevant part, that a pension forfeiture under G. L. c. 32, § 15 (4), is not an

action in contract and, therefore, is not subject to any period of limitations. Id. at 705-706, 708. In connection with our holding, we stated that a judge in the Wrentham Division of the District Court Department incorrectly concluded that the board's implementation of the forfeiture under § 15 (4) was untimely. Id. at 707 n.8. We explained that the term "final conviction," as used in § 15 (4), "should be given its specialized technical meaning, . . . [namely,] the sentence that is imposed in a criminal proceeding" (citation omitted). Id. Cf. MacLean, 432 Mass. at 343-344 (pension forfeiture pursuant to G. L. c. 32, § 15 [4], triggered when defendant was "sentenced" to probation after pleading guilty to violations of conflict of interest law, G. L. c. 268A, § 7). Although our articulation of the proper meaning of "final conviction" appears in a footnote in Woodward, it is not dicta. Rather, the explanation in that footnote addressed an additional aspect of the District Court judge's ruling and supplemented this court's central holding.

In essence, the imposition of a defendant's sentence in a criminal case constitutes both the final judgment in that case and the "final conviction" for purposes of G. L. c. 32, § 15 (4). The defendant no longer is shielded by the presumption of innocence, the consequences of the conviction may be imposed, and the criminal case is ripe for appeal. See 18 U.S.C. § 3143(b) (2006) (absent specified findings, judicial officer

"shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained" to commence serving time under criminal sentence); G. L. c. 279, § 4 ("Sentence shall be imposed upon conviction of a crime, regardless of whether an appeal has been taken," except in limited circumstances upon conviction of capital crime).  See also Flanagan v. United States, 465 U.S. 259, 263 (1984) ("In a criminal case the [final judgment] rule prohibits appellate review until conviction and imposition of sentence"); Commonwealth v. Bruneau, 472 Mass. 510, 515-516 (2015), and cases cited.  Here, DiMasi was sentenced on his Federal convictions on September 9, 2011.  With respect to pension forfeiture under G. L. c. 32, § 15 (4), this date constituted his "final conviction."

We distinguish a "final conviction" for purposes of § 15 (4) from a final judgment occurring at the conclusion of the appellate process.  "Finality is variously defined; like many legal terms, its precise meaning depends on context."  Clay v. United States, 537 U.S. 522, 527 (2003).  In other contexts, we have recognized that a judgment becomes final and a case is closed when all avenues of appeal have been exhausted or the time for appeal has expired.  See, e.g., Sliney v. Previte, 473 Mass. 283, 284, 289-290 (2015) (enlargement of statute of

limitations period for civil actions alleging sexual abuse of minor had retroactive application in case where judgment not "final" due to pendency of petition for rehearing and application for further appellate review on amended law's effective date); Commonwealth v. Augustine, 467 Mass. 230, 257 (2014), S.C., 470 Mass. 837 (2015) (judicial opinion announcing new rule of law has retroactive application "only to cases in which a defendant's conviction is not final, that is, to cases pending on direct review" in which relevant issue was raised); Foxworth v. St. Amand, 457 Mass. 200, 205-206 & n.7 (2010) (for purposes of Federal habeas corpus review, once direct appeal to State court has been decided, conviction becomes final on date when rescript issues to lower court); State Tax Comm'n v. Assessors of Haverhill, 331 Mass. 306, 309 (1954) (until pending appeal has been decided or time for appeal has expired, there is no "final determination" by Appellate Tax Board because its decision may have to be modified as consequence of appeal).  In the context of a pension forfeiture case, however, this is not the meaning of finality that we ascribe to the term "final conviction" in § 15 (4).

Interpreting the language of § 15 (4) as requiring pension forfeiture only after the conclusion of the appellate process, as DiMasi suggests, would contravene the Legislature's intent and lead to absurd results.  Such a reading would encourage

frivolous appeals and delaying tactics so that a member who has been convicted of a criminal offense involving a violation of the laws applicable to his or her office or position could continue to receive a retirement allowance for as long as possible. As we have pointed out, § 15 (4) is designed to deter misconduct by public employees, to protect the public fisc, and to preserve respect for government service. MacLean, 432 Mass. at 351. It is reasonable to infer that, once a member has been convicted of a criminal offense relating to the member's office or position, the Legislature would want to preclude such member from continuing to receive public monies, in the form of a retirement allowance, during the pendency of the member's appeal. Should the member ultimately prevail at the end of the appellate process, the member could recoup the portion of the retirement allowance that had been withheld subsequent to the member's sentencing on the criminal conviction. In this manner, the interests of both the member and the board are protected.

Furthermore, G. L. c. 32, § 15 (4), uses the phrase "after final conviction of a criminal offense." It does not refer to a "final conviction after all appeals have been exhausted," or words to that effect. Contrast, e.g., G. L. c. 21J, § 9 (d) (eligibility for reimbursement from underground storage tank petroleum product cleanup fund requires "a final judgment from a court of competent jurisdiction, all rights of appeal being

exhausted, waived, or expired"); G. L. c. 79, § 36A (payment of damages award for taking by right of eminent domain shall be made "within thirty days after all rights of appeal [from the judgment] have been exhausted or waived"). Had the Legislature intended that pension forfeiture not occur until the conclusion of the appellate process in the criminal case, it easily could have included language to that effect in the relevant statutory provisions. We conclude that the board's interpretation of "final conviction" as referring to the imposition of sentence is consistent with the language and purposes of the statute.[10] DiMasi forfeited his entitlement to a retirement allowance on September 9, 2011.

5. Return of accumulated total deductions. DiMasi contends that since September, 2011, the board wrongfully has withheld his accumulated total deductions of $127,010.05 in violation of G. L. c. 32, § 15 (4). See notes 2 and 3, supra. As a consequence, he continues, the board has deprived him of funds that could have financed his appeal and provided his family with much needed health insurance coverage. DiMasi

_____

[10] Pursuant to its authority under G. L. c. 32, § 20 (5) (b), to make rules and regulations consistent with law, the board promulgated 941 Code Mass. Regs. § 2.10(2) (2013), which defines the term "final conviction" as "the entry of a judgment of a judge or jury that a person is guilty of a crime as charged and the imposition of sentence for that crime." Although this regulation was not in effect at the time DiMasi was sentenced, it is consistent with our interpretation of the term "final conviction."

argues that the board must return his accumulated total deductions without further delay.  We agree.[11]

The plain language of G. L. c. 32, § 15 (4), permits a member "after final conviction of a criminal offense involving violation of the laws applicable to his office or position" to receive "a return of his accumulated total deductions," but "the rate of regular interest for the purpose of calculating accumulated total deductions shall be zero."  In essence, this means that the member is entitled to the return of his employee contributions (here, $127,010.05), but is not entitled to the interest that has accrued on those contributions.[12]  Nothing in § 15 (4) requires that a member repay the retirement benefits that the member received prior to a final conviction of a specified criminal offense, or that the board subtract such retirement benefits from the accumulated total deductions that

---

[11] In her decision dated April 17, 2014, denying DiMasi's motion for summary judgment and affirming the board's decision, the judge in the Boston Municipal Court stated that the parties were in agreement that DiMasi was entitled to receive a return of his accumulated total deductions as set forth in G. L. c. 32, § 15 (4).  The judge further stated that the parties also were in agreement that because G. L. c. 32, § 15 (6), was not applicable to DiMasi, see note 8, supra, the board was not entitled to recoup payments already made to him as of the date of his final conviction.

[12] Even though the member is not entitled to the interest that has accrued on his own contributions during the tenure of his employment, the funds that are returned to the member still are referred to as "accumulated total deductions."  See note 2, supra.

must be returned to the member.[13]  In contrast, see G. L. c. 32, § 15 (6), and note 8, supra.  Offenses that are covered by § 15 (4) "cause [the] loss of only future pension benefit payments and accumulated interest" (emphasis added).  Gaffney, 423 Mass. at 3 n.3.  "[T]he member still recovers actual deductible contributions."  Id. at 5.  Accordingly, we conclude that DiMasi is entitled to receive his accumulated total deductions in the amount of $127,010.05, which the board has withheld since September, 2011.

DiMasi further contends that because the board has failed to return his accumulated total deductions, he is entitled to interest on those deductions from September, 2011, until such time as payment is made in accordance with G. L. c. 32, § 20 (5) (c) (2),[14] and Herrick v. Essex Regional Retirement Bd., 465 Mass. 801, 802 (2013).  We agree.[15]

---

[13] To the extent that our decision today is inconsistent with the portion of Flaherty v. Justices of the Haverhill Div. of the Dist. Court Dep't of the Trial Court, 83 Mass. App. Ct. 120, 125, cert. denied, 134 S. Ct. 325 (2013), that pertains to the reimbursement of retirement benefits previously received by a member, that portion is overruled.  The remainder of the Flaherty decision is unaffected and continues to be good law.

[14] General Laws c. 32, § 20 (5) (c) (2), provides, in pertinent part:

"When an error exists in the records maintained by the system or an error is made in computing a benefit and, as a result, a member or beneficiary receives from the system more or less than the member or beneficiary would have been entitled to receive had the records been correct or had the

Recognizing that "errors are bound to occur" in a complicated system like the one governed by G. L. c. 32, Boston Retirement Bd. v. McCormick, 345 Mass. 692, 698 n.5 (1963), the Legislature enacted § 20 (5) (c) (2), to provide relief from such errors. In Herrick, supra at 809, this court interpreted § 20 (5) (c) (2) as providing "a remedy for all errors made by the board that affect the amount of benefits a member or beneficiary receives, allowing the error to be corrected so that members and beneficiaries receive the actuarial equivalent of the benefits they would have received had the board not erred" (emphasis in original). At issue in that case was whether a member of a public employee contributory retirement system governed by G. L. c. 32, §§ 1-28, who pleaded guilty to sexually assaulting his daughter, was entitled to prejudgment interest on a retroactive award of superannuation retirement benefits and, if so, at what rate. See Herrick, supra at 802. We concluded that where "a retirement board makes a legal error in denying

error not been made, the records or error shall be corrected . . . as far as practicable, and future payments shall be adjusted so that the actuarial equivalent of the pension or benefit to which the member or beneficiary was correctly entitled shall be paid."

[15] To be clear, the interest claimed by DiMasi is not that which is part of "accumulated total deductions," because he is not entitled to such interest under G. L. c. 32, § 15 (4). Rather, DiMasi seeks interest for the unlawful withholding of his own employee contributions (to which he is entitled) by the board beginning in September, 2011.

retirement benefits that is corrected by a court, [a member] is entitled to a rate of interest determined by the board's actuary 'so that the actuarial equivalent of the pension or benefit to which the member . . . was correctly entitled shall be paid.'"[16] Id., quoting G. L. c. 32, § 20 (5) (c) (2).

Here, after DiMasi's final conviction, the board erroneously continued to withhold his accumulated total deductions instead of returning them to DiMasi in conformity with the clear language of § 15 (4).  This happened notwithstanding the board's unanimous vote on August 30, 2012, to accept the hearing officer's decision in which he concluded that DiMasi was entitled to the return of his accumulated total deductions.  See note 11, supra.  By failing to return such deductions, the board denied DiMasi the use and benefit of his own contributions that he had made to the State employees' retirement system during the tenure of his employment.  Given the board's error, we conclude that DiMasi is entitled to interest on his accumulated total deductions from September, 2011, until such time as payment is made.  Cf. Conway v. Electro Switch Corp., 402 Mass. 385, 390 (1988) (according to fundamental principle of common law, "interest is awarded to

---

[16] The "actuarial equivalent" is defined in G. L. c. 32, § 1, as "any benefit of equal value when computed upon the basis of a mortality table to be selected by the actuary and an interest rate determined by the actuary."

compensate a damaged party for the loss of use or the unlawful detention of money"). Absent this remedy, the board has no incentive to ensure the prompt repayment of a member's accumulated total deductions. The board's actuary shall determine the appropriate interest rate "so that the actuarial equivalent of the pension or benefit to which [DiMasi] was correctly entitled shall be paid." Herrick, 465 Mass. at 802, quoting G. L. c. 32, § 20 (5) (c) (2).

6. Conclusion. This case is remanded to the county court where the single justice shall enter a judgment affirming the decision of the Boston Municipal Court. The single justice also shall remand the case to the Boston Municipal Court for entry of an order directing the board to return DiMasi's accumulated total deductions forthwith, together with appropriate interest as calculated by the board's actuary.

So ordered.