NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1366                                          Appeals Court

        AQUA KING FISHERY, LLC  vs.  CONSERVATION COMMISSION OF
                            PROVINCETOWN.


                         No. 16-P-1366.

        Barnstable.     April 13, 2017. - June 16, 2017.

        Present:  Kafker, C.J., Grainger, & Kinder, JJ.


Shellfish.  Municipal Corporations, By-laws and ordinances,
     Conservation commission, Shellfish.  Wetlands Protection
     Act.  Fisheries.



        Civil action commenced in the Superior Court Department on
February 13, 2015.

        Motions for judgment on the pleadings and a special motion
to dismiss counterclaims were heard by Gary A Nickerson, J.


        Stephen M. Ouellette for the plaintiff.
        Gregg J. Corbo for the defendant.


        GRAINGER, J.  Aqua King Fishery, LLC (Aqua King), the owner

of the commercial fishing vessel Sentinel, appeals from a

judgment of the Superior Court entered pursuant to an order

denying, in part, its motion for judgment on the pleadings.  At

issue is Aqua King's failure to obtain a permit from the

conservation commission of Provincetown (commission) for the use of hydraulic dredge fishing gear in its commercial sea clam fishing operation on areas of the ocean floor near Provincetown's shore. Aqua King contends that the activity at issue is controlled by the Division of Marine Fisheries (DMF) and is thus exempt from municipal and other State regulations. Aqua King consequently sought to reverse the enforcement order issued by the commission.[1] Aqua King also appeals from the judge's partial allowance of the commission's cross motion for judgment on the pleadings with respect to its counterclaim based on an asserted violation of § 40 of the Wetlands Protection Act, G. L. c. 131 (WPA).[2]

In its cross appeal, the commission, Provincetown's local authority enforcing the WPA and regulations of the Department of

---

[1] After a public hearing, the commission entered an enforcement order in which it found that the "SENTINEL has dredged a resource area, to wit: land under the ocean and near shore areas, by use of hydraulic dredge, resulting in alteration of the resource area. . . . The activity has been conducted without proper filings and approvals of the Conservation Commission in violation of the Provincetown Wetlands Bylaw, Provincetown Conservation Commission Regulations, Article 8, the Massachusetts Wetlands Protection Act, [G. L.] c. 131, § 40 and regulations of the Massachusetts Department of Environmental Protection, 310 [Code Mass. Regs. §§] 10.02(2)(a) and 10.25. The specific violations occurred twice on December 14, 2014."

[2] Aqua King identifies itself as a "reluctant appellant" because it has ceased its fishing activities. Although the commission filed its notice of appeal first, Aqua King is nonetheless identified as the appellant pursuant to Mass.R.A.P. 16 (i), 365 Mass. 860 (1974).

Environmental Protection (DEP), appeals from the judge's rulings that (1) denied its motion for judgment on the pleadings insofar as he concluded that article 8 of the Provincetown wetlands by-law was unenforceable, and (2) denied its request for imposition of a $25,000 fine, the maximum penalty allowed under the WPA.

We address the judge's rulings in the context of the limited scope of judicial review applicable to an agency decision challenged, as is the case here, by a petition for certiorari pursuant to G. L. c. 249, § 4.[3]  Judicial review of an agency decision in the nature of certiorari "allows a court to 'correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff. . . . In its review, the court may rectify only those errors of law which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of

---

[3] Aqua King's only avenue of appeal of the town's by-law determination was by way of G. L. c. 249, § 4.  See FIC Homes of Blackstone, Inc. v. Conservation Commn. of Blackstone, 41 Mass. App. Ct. 681, 684-685 (1996). However, the appeal of the town's application of the WPA to Aqua King's conduct should have been brought pursuant to G. L. c. 30A, § 14.  This case thus presented essentially identical administrative rulings subject to separate bases for appeal.  In any event, the parties did not raise this issue, and our cases recognize that the standard of appellate review under G. L. c. 30A, § 14, and G. L. c. 249, § 4, is essentially the same.  See Lovequist v. Conservation Commn. of Dennis, 379 Mass. 7, 17-18 (1979); FIC Homes of Blackstone, Inc., supra; Conservation Commn. of Falmouth v. Pacheco, 49 Mass. App. Ct. 737, 742 (2000).

the general public.'" DiMasi v. State Bd. of Retirement, 474 Mass. 194, 199 (2016) (citation omitted).

Town by-law. The commission argues that Aqua King was required to comply with Provincetown's by-law because it is reasonably related to the commission's statutory responsibility of protecting wetland resource areas. Article 8.1 of the by-law provides, "No hydraulic dredging shall occur within the waters under the jurisdiction of the Provincetown Conservation Commission without a proper filing before the Conservation Commission." However, "[m]unicipalities may not adopt bylaws or ordinances that are inconsistent with State laws." Boston Gas Co. v. Somerville, 420 Mass. 702, 703 (1995). Mad Maxine's Watersports, Inc. v. Harbormaster of Provincetown, 67 Mass. App. Ct. 804, 807 (2006).

The language of G. L. c. 130, § 52, first par., as inserted by St. 1941, c. 598, § 1, explicitly authorizes towns to "control, regulate or prohibit the taking of eels and any or all kinds of shellfish and sea worms" and "make any regulations not contrary to law in regard to said fisheries." Section 52, sixth par., as inserted by St. 1982, c. 363, excludes two specific species of shellfish, sea clams and ocean quahogs,[4] from the

---

[4] Sea clams (spilosa solidissima) and ocean quahogs (artica islandica).

defined category of "shellfish" that towns are authorized to regulate.

While § 52 does not contain an overt prohibition against towns' regulation of sea clam and quahog harvesting, we cannot overlook the explicit exclusion of these two organisms from the language otherwise conferring authority to towns over "any and all kinds of shellfish."  We consider the Legislature to have added the exception in 1982 to effect the common meaning of such a construction, namely to withhold authority.  Expressio unius est exclusio alterius (to express one element is to exclude others).  Skawski v. Greenfield Investors Property Dev. LLC, 473 Mass. 580, 588 (2016).  As was stated in Commonwealth v. Paasche, 391 Mass. 18, 20 (1984), "section 52 now . . . expressly eliminates the right of municipalities to regulate the commercial harvesting of sea clams."

Finally, we discern further support for this interpretation from the remainder of § 52, sixth par., which, pending the approval of the director of DMF,[5] allows for regional management of commercial harvesting of the two excepted shellfish species.[6]

---

[5] "'Director', the director of the division of marine fisheries."  G. L. c. 130, § 1, as inserted by St. 1941, c. 598, § 1.

[6] The relevant language provides "that the director may authorize the commercial management of sea clams and ocean quahogs by regional management of cities and towns, if in his opinion regional management will be in the best interests of the

The language of the by-law, prohibiting hydraulic dredging "without a proper filing before the [commission]," purports to regulate the commercial management of sea clams notwithstanding the contrary effect of the provisions cited above.  We therefore conclude that the commission's claim to exercise authority under the by-law is "a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff," and hence is invalid.  DiMasi, 474 Mass. at 199, quoting from Carney v. Springfield, 403 Mass. 604, 605 (1988).

Wetlands Protection Act.  The commission also issued the order in its role as a local enforcement agency under the WPA.  Aqua King argues that commercial fishing, even with the use of a hydraulic dredge, is controlled by the DMF and thus cannot be subject to the WPA, as that statute falls within the purview of the DEP.[7]

"In the absence of explicit legislative commands to the contrary, we construe statutes to harmonize and not to undercut

commonwealth."  Provincetown neither obtained the director's approval nor enacted the by-law as part of a regional plan.

[7] The DMF did not participate in this action, despite notification to the Attorney General's office of the pendency of these proceedings.  The DMF has taken no position on the validity or applicability of the WPA dredging regulations to hydraulic dredging for the purposes of harvesting surf clams.

The DEP also did not participate in these proceedings, and we do not have the DEP's interpretation of its regulations before us.

each other." Burbank Apartments Tenant Assn. v. Kargman, 474 Mass. 107, 124-125 (2016) (quotation omitted). Pursuant to G. L. c. 130, § 17(10), the DMF may regulate marine fisheries resources, notwithstanding any contrary provision of law. The applicable DMF regulations prohibited, and continue to prohibit, surf clam dredging at certain shallow depths during specified times of the year. See 322 Code Mass. Regs. § 6.08(2) (1993).[8] However, nothing in the regulations prohibits further regulation by other authorities, including the commission, affecting other unspecified areas or times of the year. See G. L. c. 131, § 40, as inserted by St. 1990, c. 388, § 1 (commission "may issue enforcement orders directing compliance with this section and may undertake any other enforcement action authorized by law").

Dredging without filing a notice of intent (NOI) and without receiving and complying with an order of conditions is expressly prohibited by the WPA. G. L. c. 131, § 40. Although there are exceptions to the requirement for filing an NOI,[9] commercial fishing is not one of them. Aqua King argues that

---

[8] We assume that "surf" clams and "sea" clams are idiomatic variations referring to the same organism (spilosa solidissima). The difference, if any, does not affect our analysis.

[9] See G. L. c. 131, § 40, twenty-seventh par.; 310 Code Mass. Regs. § 10.02(2) (2014).

the term "dredge" as defined in similar statutes[10] shows legislative intent that hydraulic dredge fishing was not meant to be regulated by the WPA. However, the express definition of the term "dredge," as provided by the DEP, includes even a slight temporary deepening of the ocean floor. See 310 Code Mass. Regs. § 10.04 (2014) ("[d]redge means to deepen, widen or excavate, either temporarily or permanently, land below the mean high tide level in coastal waters . . .").

Aqua King also contends that even if application of the WPA to its fishing activities is jurisdictionally proper, the commission's decision to do so was arbitrary and capricious under the circumstances, and therefore must be invalid.[11] We conclude that application of the WPA to Aqua King's method of hydraulic clamming was supported by substantial evidence and was neither arbitrary nor capricious.

Ample evidence in the record supports the commission's conclusion that Aqua King's dredging technique causes a

---

[10] See G. L. c. 91, § 54 (dumping in tide waters); G. L. c. 184, § 31 (conservation restrictions on real property).

[11] Aqua King further argues that the commission has no jurisdiction over the area where Aqua King conducted its fishing. However, jurisdiction over the area subject to this litigation was delegated by the DEP to the commission through the WPA, giving it authority to regulate nearshore areas of land under the ocean to the point where "the land is . . . 40 feet below the level of the ocean at mean low water for Provincetown's land in Cape Cod Bay." 310 Code Mass. Regs. § 10.25(2) (2014).

temporary deepening of the ocean floor within nearshore waters; a scan of the ocean floor found trenches some one to two feet in depth and six to eight feet in width.  In sum, there was a reasonable basis for the commission's decision.  See <u>T.D.J. Dev. Corp.</u> v. <u>Conservation Commn. of N. Andover</u>, 36 Mass. App. Ct. 124, 128 (1994), quoting from <u>Cotter</u> v. <u>Chelsea</u>, 329 Mass. 314, 318 (1952) ("A decision is not arbitrary and capricious unless there is no ground which 'reasonable men might deem proper' to support it").

<u>Civil penalty</u>.  The commission argues that the judge erred in denying its request for the court to impose a civil penalty against Aqua King for its WPA violation.[12]  We do not view the judge's order on this claim as a denial with prejudice.  The judge noted in his decision on the cross motions for judgment on the pleadings that, at that particular time, the commission had proposed neither remediation measures nor a timeline for their implementation.  Rather, the commission indicated that these specifics were "TBD."  Accordingly, the matter is remanded for the judge to rule on the request for the imposition of a civil

---

[12] The parties have not objected to a resolution of the penalty issue in an "on the record" proceeding reviewing the issuance of an enforcement order.  That question therefore is not before us.

penalty[13] once the commission has made the requisite
determinations under the WPA.

Conclusion.  We vacate that portion of the judgment denying
count III of the defendant's counterclaim for the imposition of
a civil penalty, and that matter is remanded for further
proceedings consistent with this opinion.  In all remaining
respects, the judgment is affirmed.

So ordered.

---

[13] The statute provides in relevant part:  "Whoever violates
any provision of this section. . . . shall be subject to a civil
penalty not to exceed twenty-five thousand dollars for each
violation."  G. L. c. 131, § 40, as amended by St. 1990, c. 388,
§ 3.